## GRINNELL v. WESTON.

(Supreme Court, Appellate Division, First Department. June 17, 1904.)

1. **FALSE IMPRISONMENT—ARREST BY OFFICER—JUSTIFICATION OF OFFICER—LIABILITY OF PERSON PROCURING ARREST.**

   Where the defendant procured plaintiff's arrest by a policeman, stating to the latter that plaintiff had committed a crime, the fact that the policeman was justified by defendant's statement in making the arrest did not excuse defendant, but he was liable for false imprisonment.

2. **SAME—QUESTION FOR JURY.**

   In an action for false imprisonment, in which it appeared that defendant procured the arrest of plaintiff because he believed him to be another person against whom he had preferred a criminal charge, it was a question for the jury whether defendant was justified in believing plaintiff to be the person guilty of the crime, and was justified in having the arrest made.

3. **SAME—EXEMPLARY DAMAGES.**

   In an action for false imprisonment, in which it appeared that defendant procured the arrest of plaintiff because he believed him to be another person against whom he had preferred a criminal charge, plaintiff was not entitled to exemplary damages unless defendant was actuated by malice, even though his conduct in causing plaintiff's arrest was not that of a prudent man.

4. SAME—AGENCY—LIABILITY FOR ACTS OF OFFICER AFTER ARREST.

   In an action for false. imprisonment, in which it appeared that defend-
   ant procured plaintiff's arrest because of his resemblance to a man against
   whom defendant had made a criminal charge, and that defendant had
   employed private detectives to learn the whereabouts of defendant, and
   that these detectives, together with a police officer, arrested plaintiff, and
   the police officer took him into custody, defendant, though liable for the.
   acts of the private detectives and for the arrest and detention of plain-
   tiff, was not liable for the acts of the police officer after the arrest.

Appeal from Trial Term, New York County.

Action by Ashbel P. Grinnell against Edward Weston. From a
judgment for plaintiff, and from an order denying a motion for a
new trial, defendant appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, IN-
GRAHAM, and LAUGHLIN, JJ.

James W. Osborne, for appellant.
Thomas P. Wickes, for respondent.

INGRAHAM, J. The plaintiff, a physician and surgeon, engaged
in the practice of his profession in the state of Vermont, on the 23d
day of March, 1901, when in the Grand Central Depot ·in the city of
New York, about to take a train, was arrested by a police officer of
the city of New York at the instigation of the defendant, taken to
police headquarters, and, after a detention there, taken before a po-
lice magistrate and discharged. He brought this action to recover
damages for a false imprisonment based upon this arrest and deten-
tion.

Upon the trial it was not disputed but that the defendant caused
the arrest of the plaintiff, mistaking him for a person against whom
he had made a criminal charge, and that the mistake was occasioned
by the resemblance of the plaintiff to the person against whom the
defendant had made the charge. · There was no question but that
there was a serious mistake, and that the plaintiff is of irreproacha-
ble character, standing high in his profession. On behalf of the de-
fendant it was proved that he was the president of the Weston Elec-
trical Instrument Company, having a large manufacturing establish-
ment at Newark, N. J.; that some time before this arrest he had
been swindled by a man named Raynor; that when in New York,
stopping at the Waldorf Hotel, he saw the plaintiff in that hotel, and,
mistaking him for Raynor, he at once took steps to locate him, so
as to make a criminal charge against him; that defendant employed
private detectives, who ascertained that plaintiff was stopping at the
Manhattan ·Hotel, and was to leave New York on the morning of
March 23, 1901. This information being communicated to the de-
fendant, he sent for one of the detective sergeants of the city of New
York, who came to the defendant's room at the hotel about half past
7 o'clock in the morning. With the detective sergeant and the pri-
vate detectives the defendant went to the New York Central Depot,
pointed the plaintiff out as Raynor, whereupon the plaintiff was ar-
rested by the detective sergeant and taken to police headquarters,
and subsequently taken before a magistrate, when the mistake was

discovered, the attorney for the defendant stating to the magistrate that it was a case of mistaken identity, and that there was no charge against the plaintiff, and the magistrate discharged the plaintiff from arrest. The defendant then wrote to the plaintiff apologizing for the mistake, explaining the circumstances under which it occurred, and offering to reimburse the plaintiff for any expenses that he had been put to in consequence of his arrest. The whole case shows that the defendant was mistaken in his identification of the plaintiff, that he supposed that the person whose arrest he had instigated was the man Raynor against whom the criminal charge was pending, and that after the mistake was discovered he did everything in his power to remedy it. I have no doubt but that the arrest and detention of the plaintiff was illegal. The plaintiff had committed no crime, and there was no charge against him. He was followed by the defendant and private detectives to the railroad depot, where he was about to take a train for his home. The defendant procured the attendance of a police officer at the depot, insisted that the officer should arrest the plaintiff, refusing to state the nature of the charge, and refusing to listen to the plaintiff's explanation and protestation of his innocence. While a police officer, under section 177 of the Code of Criminal Procedure, may without a warrant arrest a person when a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it, a private person is only authorized to arrest another when a crime has been committed or attempted in his presence, or where the person arrested has committed a felony, although not in his presence (section 183, Code Cr. Proc.). The plaintiff's testimony as to his arrest is that after he went through the gate to take the train he was interrupted by a man, whom he identified as the detective sergeant, putting his hand on the plaintiff's shoulder and telling the plaintiff that he was wanted; that the plaintiff protested, and asserted that there was a mistake; that the defendant then appeared and said to the plaintiff, "You know me," to which the plaintiff answered, "I have never seen you before in my life," whereupon the defendant said, "You know me well enough. You have my money," and, addressing the men in charge of the plaintiff, said, "Take him along," and the defendant then disappeared. The detective sergeant testified that at the request of the defendant he went to the Forty-Second street depot, and remained on the steps facing Forty-Second street; that he had been waiting there 10 or 15 minutes when the defendant and the private detectives came there, accompanied by the plaintiff and his wife; that the defendant then said, "Officer, this is the man who swindled me. Take charge of him;" that the plaintiff said, "There is some mistake here," whereupon the officer took the plaintiff to police headquarters.

The defendant upon the trial, and also upon this appeal, insists that the court should have dismissed the complaint upon the ground that as a police officer made the arrest, and that upon the undisputed evidence a crime had been committed, and as the statement of the defendant to the police officer that the plaintiff was the person who had committed the crime authorized the police officer to make the arrest, the arrest and detention were not illegal, and therefore an ac-

tion for false imprisonment cannot be sustained; and in support of this proposition he cites the case of Thompson v. Fisk, 50 App. Div. 71, 63 N. Y. Supp. 352, where the court said:

"In this case there was no question made but that a felony had been committed. Nor was any suggestion made but that the policeman was a police officer. If, then, the officer had reasonable cause for believing that the plaintiff committed the felony, an arrest by him without a warrant was lawful, and even if the defendants procured the officer to make the arrest, still if the arrest and detention by the officer were lawful, then the defendants would not be liable therefor, as for an unlawful arrest and imprisonment. So that the real question was whether the officer, at the time he made the arrest, had reasonable cause for believing the plaintiff had committed the felony."

The question here presented was not directly before the court upon that appeal, as what was determined was the question whether the officer had reasonable ground for believing that the plaintiff was connected with the felony that had been committed, which was a question for the jury and not for the court. If that case determined that, where an individual requires a police officer to arrest an innocent person, and the police officer, acting upon the statement made, makes the arrest, the person instigating the arrest is not liable if the police officer believed him, I think it is contrary to all the decisions and the settled law of this state. A peace officer has authority to make an arrest where a felony has been committed, and when he has reasonable cause to suspect the person arrested of having committed it, and, if the officer acted in good faith and was justified in making the arrest, he is protected; but the fact that the police officer is justified does not absolve the individual at whose request the arrest has been made from liability, if in fact no felony had been committed, or the person arrested was not connected with the commission of a felony; and this distinction arises from the difference in the power of a police officer and a private individual to make an arrest. If a private individual identifies a person as one who has been guilty of a crime, and requires a police officer to arrest him without a warrant, the arrest is the joint act of the private individual and the peace officer, and, if the arrest is unwarranted and illegal, both the police officer and the private individual are joint tort feasors, and both are liable for the wrong. The fact that the officer acting under the information given to him by the individual is the one that takes the physical possession of the person arrested does not relieve the private individual from responsibility. Both the individual and the officer united in the act, and are both responsible for the arrest, if unlawful. While the officer might prove a justification by showing that a felony had been committed, and that he acted upon the statement made to him by the instigator, and had reasonable cause to believe that the person arrested was guilty of the felony, the person instigating the arrest, and who was jointly responsible with the police officer for it, to justify himself must show that a felony had been committed, and that the person arrested was connected with it, or, at least, that he acted upon grounds which would justify a prudent person in believing that the person arrested was guilty. It would certainly be a strange result if a person at whose instigation another was arrested

could escape responsibility for a false arrest and detention by showing that he had induced a police officer to believe a false statement of another's connection with a crime, so that the police officer would be justified in believing such false statement in making the arrest. That the police officer was justified does not justify the individual who induced the officer to make the arrest. Of course, to connect an individual with the arrest, it must be shown that he was the instigator and caused the arrest to be made. Merely furnishing information to a police officer when called upon to state facts for his guidance, although subsequently shown to be inaccurate, does not make the person making the statement a joint actor with the police officer in making the arrest. It is only when the action of the police officer is instigated or procured by the private individual, and the police officer acts, not upon his own volition, but to carry out a request, so that the private individual in effect procures the officer to make the arrest, that the individual becomes a joint actor with the officer in making the arrest; and this is the effect, I think, of all the authorities. In Burns v. Erben, 40 N. Y. 463, Judge James says:

"But the allegations of the complaint are for an illegal arrest and detention. Such acts constitute what is usually denominated an action for false imprisonment; an action in the nature of a trespass for a direct wrong or illegal act, in which the defendant must have personally participated. Or the act must have been by his direct or indirect procurement. The gist of such an action is an unlawful detention, and motive will be inferred so far, at least, as to sustain the action; and evidence to disprove actual motive only bears upon the question of damages."

In Farnam v. Feeley, 56 N. Y. 451, Judge Andrews says:

"If the defendant directed the officer to arrest the plaintiff, and he took her into custody in consequence of such direction, the defendant is liable as in an action for false imprisonment, unless he gave evidence establishing a justification. To justify a private person in arresting or aiding in the arrest of another, without a warrant, on a criminal charge, it must appear that a felony had been committed, and that he acted circumspectly, and upon grounds which would have justified a careful and prudent person in believing that the person arrested was guilty of the crime. The burden is upon him to show, when sued for the arrest, that the circumstances justified the suspicion; and if this is made to appear he is not liable, although the accused was in fact innocent."

And in Carson v. Dessau, 142 N. Y. 445, 37 N. E. 493, the Chief Judge says:

"The arrest of the plaintiff was without warrant, on a charge of crime, when in fact, according to her testimony, no crime had been committed, and no reasonable ground for suspicion existed on the part of David Dessau, by whose immediate direction the arrest was made. He was guilty of false imprisonment, whether or not the officer was liable."

In Hewitt v. Newburger, 141 N. Y. 538, 36 N. E. 593, the defendant applied to a magistrate and obtained a warrant for the plaintiff's arrest, which warrant was without jurisdiction, and was therefore void. Under this warrant the plaintiff was arrested and detained until he was subsequently discharged by the magistrate, whereupon the plaintiff brought an action to recover for a false imprisonment. The complaint was dismissed, but the Court of Appeals, in ordering a new trial, held that the magistrate was wholly without jurisdiction,

88 N.Y.S.—50

and the warrant and all proceedings under it were absolutely void, and that, the process being void, the defendant at whose instance it was issued was liable; the court saying:

"This process being void, the defendant is liable. The evidence shows him to have been active and officious in procuring this arrest. He went to the office of the recorder, and said he wanted a warrant for the arrest of plaintiff. He stated the facts, swore to this information, procured the warrant, handed it to the chief of police, said he wanted it served 'right away,' offered to provide a 'rig' to go to plaintiff's house, and sent his son later to inform the officer where he could and did find plaintiff in a certain store at Amsterdam. All these circumstances establish defendant's liability, and it was for the jury to determine what damages, if any, the plaintiff had suffered in the premises."

In that case there would be no doubt but that the chief of police, acting under the warrant of the recorder, was protected. It was not illegal for him, acting under this warrant, to make the arrest, and to detain the person arrested until discharged by the recorder; but, notwithstanding the fact that he was protected, the defendant, at whose instigation the warrant had been obtained and the arrest made, was held liable in an action for false imprisonment. None of these cases —and no case with which I am acquainted, unless it be the case of Thompson v. Fisk, supra—has held that because a police officer, acting upon information furnished to him by another, was justified in making an arrest, the person at whose instigation and procurement the arrest was made was not liable.

A further question is presented as to whether the judge was authorized to direct the jury to find the defendant liable for the arrest and detention of the plaintiff, or whether upon the facts it was a question for the jury to say, if they found that a felony had been committed, whether the defendant was justified in requesting the officer to make the arrest; and I am inclined to think that under the facts of this case this was a question for the jury. In Farnam v. Feeley, supra, the court expressly held that, when a private person is sued for an unlawful arrest and detention, "the burden is upon him to show, when sued for the arrest, that the circumstances justified the suspicion; and if this is made to appear he is not liable, although the accused was in fact innocent." In this case the question for the jury would be whether they believed that a felony had been committed, and, if they so found, whether, under all the circumstances, the defendant was justified in the conviction that he expressed that the plaintiff was the person guilty of the felony, and that, if he was, then he was justified in taking the measures that he did to insure the detention of the plaintiff. I think, therefore, the learned trial judge should have first submitted that question to the jury, with directions that, if they found against the plaintiff upon this point, then they were to award the plaintiff compensatory damages; with the further direction that, if they found that the action of the defendant was wanton or malicious, they would be justified in awarding the plaintiff punitive damages.

The court, in submitting this question to the jury, held as a matter of law that the plaintiff was entitled to compensatory damages; "that is, he is entitled to such a sum as will compensate him for the bodily

and mental suffering caused by his arrest, for the shame and humiliation of the arrest and the injury to his feelings, and for his anxiety of mind. That he is entitled to;" and that, if the jury believed that the defendant acted with a wanton disregard of plaintiff's rights, they could give more than compensatory damages, and left it to the jury to say whether the defendant acted as a prudent man would have acted under the circumstances of the case; that "if you believe plaintiff's statement of it, then was it the act of a prudent man to cause plaintiff's arrest? If a crime had in fact been committed by the plaintiff, then the defendant had a right to cause his arrest, but he acted at his peril when he arrested the plaintiff. Did he act as a prudent man would have acted under the circumstances when he caused the plaintiff to be arrested by the detectives and taken to the police headquarters, and from there to Jefferson market court? That is for you to determine from the evidence in the case. * * * I have told you that the detectives, Smith, Kennedy, Knox, Heitman, and McConville, were the defendant's agents, and their knowledge was his knowledge, their acts were his acts. * * * Was it the act of a prudent man to arrest at the railroad station a person who had been at the Manhattan Hotel all the morning getting his breakfast? If defendant acted as a prudent man would have acted under the circumstances, you can do nothing but give compensatory damages to the plaintiff. If he did not act as a prudent man would have acted under the circumstances, you may give more than compensatory damages. I charge you that if the defendant used reasonable care and caution in causing the arrest of the plaintiff, then there is no evidence of actual malice; and, if there is no evidence of actual malice, the only damages you can give are compensatory damages." Counsel for the defendant then asked the court to charge that the jury "have a right, upon the question of actual malice upon the part of Edward Weston, to take into consideration the fact that a felony was actually committed by Edward S. Raynor, and that Edward Weston actually believed, on reasonable grounds, that the plaintiff and Raynor were one and the same person"; that "if Edward Weston used reasonable care and caution in causing the arrest of the plaintiff, in the actual belief, with reasonable grounds on his part, that Raynor and the plaintiff were one and the same person, then there is no evidence whatever of actual malice in this case"; "that if there was no evidence of actual malice, then the most that the jury could give was compensatory damages;" that "it is a question for the jury to determine whether there was a reasonable ground for suspicion against the plaintiff in this case, and if there was, and the defendant was not actuated by actual malice, the plaintiff is entitled to recover only compensatory damages"; "that the jury had a right to take into consideration, in measuring the damages, the fact that a felony was actually committed by Raynor, and that the defendant actually believed that such a felony had been committed by Raynor, and that the defendant actually believed that the plaintiff and Raynor were one and the same person;" that if the jury "find that a felony was actually committed by Raynor, and if Edward Weston, the defendant, actually and with reasonable cause believed that the plaintiff and Raynor

were one and the same person, the jury have a right to take into consideration these facts in measuring the damages." Finally, the defendant requested the court to charge that "if the defendant Weston had no malicious motives, and acted with probable cause in procuring the arrest of the plaintiff, the jury can find only compensatory damages." These requests were all refused, and to each refusal the defendant excepted. We think it was error for the court to refuse these requests. From the size of the verdict it is quite clear that the jury awarded a large sum as exemplary damages. The case discloses that Raynor, the man that the defendant had charged with having committed an offense which would justify his arrest, resembled the plaintiff, and there is no evidence to show that the defendant, in procuring the arrest of the plaintiff, had any motive except to secure the arrest of the man who had been guilty of a crime; and that the arrest of the plaintiff was caused by the resemblance that he bore to Raynor was also apparent. I am not prepared to say that it would have been error, with proper instructions, to submit to the jury the question as to whether there was actual malice which would justify an award of exemplary damages; but, assuming that that is so, the defendant was then entitled to have the jury specifically instructed that if the defendant acted upon a sincere belief that the plaintiff was the person who had committed the felony, and in good faith acted upon that belief, it should be considered in fixing the amount of damages that they would award the plaintiff. That exemplary damages are only awarded in case of the proof of actual malice, and that in the absence of proof of actual malice the jury is confined to compensation, is elementary, and the defendant was entitled to have the jury expressly instructed that they must find, not only that there was a false arrest and false imprisonment, but that the defendant, in causing the arrest of the plaintiff, acted from actual malice. The evidence to prove this actual malice may consist of proof that acts of the defendant were instigated by a desire to injure the plaintiff. Such malice may also be proved by wanton conduct, without a reasonable ground to suppose that the arrest was justified, or by other conduct of the defendant which would indicate that the wrong was committed from malicious or improper motives.

But assuming that the evidence justified a finding of actual malice, the defendant was entitled to have the jury instructed that they must find that such malice existed before they could award exemplary damages. No such instruction was given. The defendant again and again requested the court to instruct the jury that, if they believed that the defendant in good faith believed that the plaintiff was the individual who had committed the felony, they must consider that fact in determining the amount of damage that they should award; and this was a proper request, to which the defendant was clearly entitled. The learned trial court left it to the jury to say, not whether the defendant was actuated by actual malice, but whether it was the act of a prudent man to arrest at the railroad station a person who had been at the Manhattan Hotel all the morning getting his breakfast, and instructed the jury that if the defendant acted as a prudent man would have acted they could give nothing but compensatory damages to the plaintiff, but if

he did not act as a prudent man would have acted under the circumstances, they could give more than compensatory damages; and then, in response to a request of the defendant, the court said, "I will leave it to you to say whether it was the act of a prudent man not to find out who the man was," to which the defendant excepted. This, it seems to me, was not the question for the jury to determine. Even if the defendant's action was not that of a prudent man, they were not justified in giving exemplary damages, unless they found that the defendant acted with actual malice in causing the plaintiff's arrest; and, while they could consider in that connection whether the plaintiff acted as a prudent man, there must still exist a conviction that actual malice existed before exemplary damages could be awarded.

We think that there was also another error in the charge which requires us to reverse the judgment. The court expressly instructed the jury that these detectives, including the detective sergeant, who was a police officer, were the defendant's agents, that their knowledge was his knowledge, and their acts were his acts. That charge does not seem to have been excepted to, but in relation thereto counsel for the defendant asked the court to charge the jury that McConville, who was a police officer, was not the agent of the defendant after the arrest was made; that the defendant was in nowise responsible for any act of McConville's after the arrest was made; that McConville was then governed by the rules of the police department. These requests were declined, and the defendant excepted. I think the defendant was clearly entitled to this instruction. While the defendant was undoubtedly liable for the acts of the subordinates that he employed to accomplish his purpose, the acts of the police officer, after the arrest, without the knowledge of the defendant, was not evidence upon the question of actual malice of the defendant. McConville was a public officer, charged with the performance of a public duty. When he made the arrest and took the plaintiff into custody, while the defendant was responsible for the arrest and detention, he was certainly not responsible for any act of McConville, except so far as it was the necessary consequence of his having instigated the arrest and detention; and the fact that McConville did not treat the plaintiff with consideration, or was unduly harsh in his treatment—of which I must confess that there is little, if any, evidence—those acts certainly could not be considered by the jury in determining whether or not the defendant was guilty of actual malice. The question of the defendant's malice must be determined by the existing condition of his mind which instigated him to cause the plaintiff's arrest, and that should not be affected by any act of the police officer, who arrested the plaintiff, after the arrest, and without the authority or consent of the defendant. "A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent." Lake Shore, etc., R. R. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97.

There are other questions presented upon this appeal which it is not necessary for us to determine, as, for the reasons pointed out, there must be a new trial.

. It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN and HATCH, JJ., concur. PATTERSON, J., concurs in result.

LAUGHLIN, J. (concurring). I do not agree with the rule governing the award of exemplary damages as laid down in the prevailing opinion, yet I think a new trial should be granted upon the ground that the verdict is excessive, and that the jury were not fully instructed with reference to their duties in determining the amount of the award of vindictive damages. I understand that to warrant the award of exemplary damages—which, as the term implies, are intended not as a compensation to the plaintiff, but as a punishment to the defendant, and a warning to him and others against the repetition of such conduct in the future—malice must be shown, but not necessarily actual malice. The malice may be either actual or express, or it may be constructive or implied. In libel cases the malice may be inferred from the falsity of the publication, and yet it is manifest that the inference of actual malice would scarcely be warranted from the mere falsity of the publication.

Actual malice, as distinguished from implied or imputed malice, is where the act has been performed through ill will toward the plaintiff, or with an intention to injure him. In the case of a corporation it would ordinarily be impossible to show the existence of actual malice, and yet verdicts for punitive damages in actions against them for libel have frequently been rendered and sustained throughout all the courts. Verdicts in libel cases have been sustained against an individual publisher who had no knowledge of the publication, and therefore could not have had actual or express malice. This, as I understand it, is upon the theory that, although there may be no actual or express malice, the nature and consequences of the wrong may be such that the party responsible therefor may be chargeable with constructive malice, implied or inferred from the facts. When, however, a court instructs a jury that punitive damages may only be awarded where malice is shown, the jury should be fully instructed with reference to the different kinds of malice, or otherwise the charge may be misleading, and the jury may infer that it is incumbent on the plaintiff to show acts or declarations on the part of the defendant indicating the existence of ill will and an intent to injure. I am also of opinion that ordinarily the jury will understand their duties if the court, in instructing them, would omit the term "malice," and charge that if the act complained of was committed wantonly or recklessly, even though without ill will, or if the defendant was actuated by ill will or an intention to injure, they may award punitive damages, and that the amount of the award should be according to the gravity of the conduct of the defendant.

In a great number of well-considered opinions in this and other jurisdictions (see Warner v. Press Publishing Co., 132 N. Y. 181, 30 N. E. 393; Young v. Fox, 26 App. Div. 261, 49 N. Y. Supp. 634; Smith v. Matthews, 152 N. Y. 152, 46 N. E. 164; Holmes v. Jones, 121

N. Y. 461, 24 N. E. 701; Grant v. Herald Co., 42 App. Div. 354, 59 N. Y. Supp. 84; McMahon v. Bennett, 31 App. Div. 16, 52 N. Y. Supp. 390), the rule is also stated that punitive damages may be awarded if the act complained of was done carelessly.   On reflection I am inclined to the view that this is sound, and that therefore, technically speaking, no error was committed in the charge in that regard.   When an act of such serious consequences as depriving a citizen of his liberty is committed carelessly, the act may well be characterized as reckless.   A want of prudence when the failure to exercise prudence may be of such grave consequences to the party arrested characterizes the act as committed in utter disregard of the rights of the party affected.   Here, however, it is clear that there existed no ill will, and there was no actual malice.   It is a case where actual malice did not exist, but constructive malice might be inferred or implied and imputed.   By the exercise of care and prudence, having in mind the consequences of a mistake by which an innocent man might be arrested, as was done, the arrest of the plaintiff would have been avoided.   Common prudence should have dictated an inquiry at the Manhattan Hotel concerning the plaintiff, and, had such inquiry been made, the name under which he was registered and his identity would have been revealed.   The case is one for compensatory damages for the humiliation and anguish of mind of the plaintiff, his loss of time, if its value be shown, and the expense to which he was subjected; and it is also a case where a jury, in the exercise of a wise discretion, should impose punitive damages, but not in an amount such as should be awarded if the defendant were actuated by ill will.