POLONSKY v. PENNSYLVANIA R. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

No. 97.

FALSE IMPRISONMENT (§ 7*)—RIGHT OF ACTION—PERSONS LIABLE.

Plaintiff, a New York business man, took a train at Pittsburg for New York in the evening, buying a ticket and a berth in the Pullman car. He afterward showed his railroad ticket to the conductor, and gave it to the Pullman conductor. About midnight he was awakened by the Pullman conductor, who demanded his railroad ticket, charged him with being a thief, and ordered him to get up and dress, which he did. On arrival at Altoona, such conductor took him to a waiting policeman, and said, "This is the man I want you to lock up," whereupon the policeman took him to the jail, where he was locked in a cell until 11:30 the next forenoon, when he was liberated without being taken before a magistrate or any charge having been made against him. A statute of Pennsylvania (Pepper & Lewis' Dig. p. 3950, par. 120) makes it an offense for any person to ride on a railroad without paying his fare, and provides that "any constable or police officer having knowledge or being notified of any violation of this act shall forthwith arrest such offender and take him before any magistrate," and authorizes the magistrate to issue a warrant on information duly made on oath, to try the accused, and, if convicted, to fine and imprison him. *Held*, that such statute conferred no authority on the policeman to arrest plaintiff upon the mere direction of the Pullman conductor, to lock him up, nor to confine him in jail without the warrant of a magistrate, and that plaintiff had a right of action for false imprisonment against the company or companies whose servant such conductor was.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–61; Dec. Dig. § 7.*]

Lacombe, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by Jacob Polonsky against the Pennsylvania Railroad Company and the Pullman Company. Judgment for defendants, and plaintiff brings error. Reversed.

For opinion below on motion for new trial, see 184 Fed. 558.

Olcott, Gruber, Bonynge & McManus (Irving L. Ernst and Monroe M. Schwarzschild, of counsel), for plaintiff in error.

Alexander & Green (Allan McCulloh and Clifton P. Williamson, of counsel), for defendant in error the Pullman Company.

Burlingham, Montgomery & Beecher (Morton L. Fearey, of counsel), for defendant in error Pennsylvania Railroad Co.

Before LACOMBE, COXE and NOYES, Circuit Judges.

COXE, Circuit Judge. The facts as they appear from the testimony offered by the plaintiff are in brief as follows:

The plaintiff has resided in the city of New York for 19 years and is engaged in the wholesale manufacture of cloaks and suits. On the night of the 14th day of July, 1906, he left Pittsburg at about 10 o'clock, destined for New York, on a train of the Pennsylvania Railroad Company. Before starting he had purchased a ticket for his

transportation and also for a berth, lower No. 8, in one of the Pullman cars. Previous to taking the train he exhibited his passage ticket to the baggage master and, after paying an excess in weight of $1.40, received a check for his trunk. Again, when passing through the gate he presented his ticket to the man in charge there, who examined and returned it, permitting the plaintiff to pass through. On reaching the train the Pullman conductor was standing in front of the car in which the plaintiff's berth was located. He handed the ticket for his berth to this official, who examined it and handed it back to the plaintiff. The Pullman porter took his bag and the plaintiff went into the car. A short time afterwards the plaintiff went to the smoking compartment and remained there in company with friends until some time after the train started. About half past 10 the Pullman conductor and the railroad conductor entered the smoking compartment and asked for the tickets of the passengers there assembled. The plaintiff gave both his transportation ticket and his voucher for the sleeping car berth to the Pullman conductor. Thereafter the plaintiff retired to his berth in lower 8 and fell asleep. At about half past 12 he was awakened by the Pullman conductor, who asked for his transportation ticket. While the plaintiff was looking for the ticket the conductor said, "You don't belong here." Being asked what he meant by such a statement, the conductor replied, "You are a thief and belong in jail." The conductor said further, "You get dressed; we will soon get to Altoona." The plaintiff said, "What are you going to do?" The conductor replied, "I will show you what I am going to do." The plaintiff said, "All right, I will get dressed." When the train arrived at Altoona, the conductor took the plaintiff to the front of the car, a policeman was waiting there and the conductor said to him, "This is the man I want you to lock up."

It was then about half past 12 at night. The plaintiff was taken to an office at the station where he remained about five minutes. He was then taken to the jail in Altoona, walking with the officer through the public streets. Arriving at the jail he was placed in a cell where other prisoners were also confined. He remained there about 10 minutes and was afterwards removed to another cell, which he occupied alone. He was kept in the latter cell until about half past 11 o'clock in the morning. The cell was without accommodations and he was given nothing to eat. On the way to the station house he asked to be permitted to telegraph to his home and also to visit a friend in one of the hotels which he passed on the way. Both of these requests were refused. At half past 11 o'clock he was liberated from the jail and later in the afternoon took a train for New York, which he reached on Monday morning. He was in Altoona in all about 11 hours.

This, in brief, is the statement of the plaintiff, corroborated in its essential particulars by three disinterested witnesses. Upon the evidence as thus presented it appears that the plaintiff was the subject of a wanton outrage without palliation or excuse. A respectable business man, having paid for his transportation and a berth, was rudely awakened from his sleep at midnight, told he was a thief who

belonged in jail and was handed over to a police officer at Altoona by an agent of the Pullman Company with instructions to lock him up. Obeying these instructions the officer took him to the common jail where he was locked in a cell without food or accommodations and detained until half-past 11 the next morning, when he was released without apology or explanation. During all this time there was not even the semblance of legal proceedings; no complaint was lodged against the plaintiff, no hearing was had before a magistrate, no judgment was rendered, no discharge was granted. To assert that no redress is possible for so wanton a trespass upon the rights of a citizen is to impeach the jurisprudence of our country. It is argued that the proper remedy is an action for malicious prosecution. We think no such action will lie. The indispensable elements of such an action are, first, a prosecution; second, malice; and, third, a termination of the prosecution favorable to the plaintiff. The difficulty here is that there was no prosecution of any kind, no process, no complaint, no trial, no judgment, no dismissal, and of course, no termination favorable to the plaintiff. There was, in fact, nothing to terminate. An action for malicious prosecution, in such circumstances, would never survive a demurrer. If the action for false imprisonment is not well brought, the plaintiff is remediless.

It is argued by the counsel for the defendant, the Pullman Company, that the arrest was justified by the statute of Pennsylvania which provides that it shall be an offense for any person to travel upon a railroad within the commonwealth without paying his fare. Section 120 is as follows:

"Sec. 120. Proceedings on Arrest. Any constable or police officer, having knowledge or being notified of any violation of this act, shall forthwith arrest such offender and take him before any magistrate, alderman or justice of the peace, or any such magistrate, alderman or justice of the peace shall issue a warrant or capias for the arrest of any such offender, upon information duly made on oath or affirmation; and said magistrate, alderman or justice, upon the person charged being produced before him, shall forthwith proceed to hear and determine the matter in issue, and if he shall convict the person so charged with the violation of the provisions of this act, he shall proceed to pronounce the forfeiture of the penalty which he shall adjudge against the person so convicted, and shall commit the person so convicted to the county jail of the proper county for the period aforesaid; and if the person so convicted refuse or neglect to pay such penalty and costs immediately, then the said magistrate, alderman or justice shall commit the person so convicted to the jail of the county wherein the offence was committed, for a further period not exceeding ten days." Pepper & Lewis' Dig. p. 3950.

This statute permits an arrest without process only when the arrest is followed forthwith by a hearing before the magistrate. In other words, it gives the accused person a right to be heard before he is convicted and sentenced. Assuming that the testimony sufficiently shows that the Altoona policeman was notified that the plaintiff was traveling without paying his fare, the policeman was justified in taking him before a magistrate, who alone was authorized, after hearing what he had to say in his defense, to pronounce judgment of imprisonment. The policeman, obeying the conductor's direction, arbitrarily usurped the powers of the magistrate and imprisoned the plaintiff without the pretense of a hearing. In order to justify their ac-

tion under the Pennsylvania law, the defendants must show that the policeman acted under its provisions. This has not been done; on the contrary, it appears that he acted outside of and in opposition to its explicit directions. He cannot claim the protection of a law which he has violated. The defendants, through their duly authorized agents, set the machinery in motion, which resulted in the unlawful imprisonment of the plaintiff, and, in the absence of any explanation on their part, they must be held responsible therefor. They pointed out the plaintiff, directed the officer to "lock him up" and the officer obeyed.

We have been cited to numerous authorities which hold that imprisonment by virtue of a legal writ issued in due form by a court of competent jurisdiction and served in a legal manner cannot be the basis of an action for false imprisonment. Carman v. Emerson, 71 Fed. 264, 18 C. C. A. 38; Whitten v. Bennett, 86 Fed. 405, 30 C. C. A. 140; Reisterer v. Lee Sum, 94 Fed. 343, 36 C. C. A. 285; Van v. Pacific Coast Co. (C. C.) 120 Fed. 699.

In the case of Whitten v. Bennett, supra, which was relied on by the judge of the Circuit Court as authority for dismissing the complaint, the court says:

"Arrest under a warrant, valid in form, issued by a competent authority upon sufficient complaint, is not false imprisonment. It cannot be attacked collaterally, and is a perfect shield, in such an action, to the officer and the party who has procured its issuance."

We understand this to be the law, but the facts do not bring the case at bar within its provisions. As before pointed out, there was in the present case nothing valid from the insufficient complaint to the unlawful imprisonment.

In Knickerbocker Steamboat Co. v. Cusack (1904) 172 Fed. 358, 97 C. C. A. 56, the mate of the General Slocum, a steamer belonging to the defendant, pointed out the plaintiff to a police officer, saying "Catch that fellow, take him." The mate subsequently made a complaint, not justified by the facts, before a magistrate, charging the plaintiff with disorderly conduct with intent to provoke a breach of the peace. The court said:

"In these circumstances we think the conduct of the mate after the arrest may be justly regarded as a continuation of the original wrong for which defendant was liable, and that the subsequent proceedings were the direct result of the unjustified and pernicious activity and urgency of the mate, and only indirectly and remotely attributable to the action of the committing magistrate."

The facts differ from those in the case at bar in that the New York Code permits an arrest without process for a misdemeanor only when committed in the presence of an officer making the arrest. As the offense was not so committed the original arrest was illegal. But so was the arrest in the case at bar unless facts were presented to the officer sufficient to justify him in believing that an offense had been committed. It can hardly be contended that an officer is warranted in arresting a citizen simply because he is told to lock him up.

There is no pretense that the officer had knowledge of the alleged offense and there is nothing to show that he was notified of any facts constituting an offense. The Pullman Company expressly alleges that the arrest was made "without any act, request or participation upon the part of this defendant, its agents, servants or employés or any or either of them." If this be true the officer, upon the testimony, must have acted without proof.

The case of Grinnell v. Weston, 95 App. Div. 454, 88 N. Y. Supp. 781, is very similar upon the facts to the case in hand. The defendant, Weston, mistook the plaintiff, Grinnell, for a man who had swindled him, pointed Grinnell out to an officer and said, "Officer this is the man who swindled me. Take charge of him." Judge Ingraham, who delivered the opinion of the court, refers to the case of Thompson v. Fisk, 50 App. Div. 71, 63 N. Y. Supp. 352, and says:

"If that case determined that where an individual requires a police officer to arrest an innocent person and the police officer, acting upon the statement made, makes the arrest; that the person instigating the arrest is not liable, if the police officer believed him. I think it is contrary to all the decisions and the settled law of this state. A peace officer has authority to make an arrest without a warrant where a felony has been committed and when he has reasonable cause to suspect the person arrested of having committed it, and if the officer acted in good faith and was justified in making the arrest, he is protected; but the fact that the police officer is justified does not absolve the individual at whose request the arrest has been made from liability if in fact no felony had been committed, or the person arrested was not connected with the commission of a felony, and this distinction arises from the difference in the power of a police officer and a private individual to make an arrest. If a private individual identifies a person as one who has been guilty of a crime and requires a police officer to arrest him without warrant, the arrest is the joint act of the private individual and the peace officer, and if the arrest is unwarranted and illegal both the police officer and the private individual are joint tort feasors and both are liable for the wrong. The fact that the officer acting under the information given to him by the individual is the one that takes the physical possession of the person arrested does not relieve the private individual from responsibility. Both the individual and the officer united in the act and are both responsible for the arrest if unlawful. While the officer may prove a justification by showing that a felony had been committed, and that he acted upon the statement made to him by the instigator and had reasonable cause to believe that the person arrested was guilty of the felony, the person instigating the arrest and who was jointly responsible with the police officer for it, to justify himself must show that a felony had been committed, and that the person arrested was connected with it, or at least that he acted upon grounds which would justify a prudent person in believing that the person arrested was guilty.

"It would certainly be a strange result if a person at whose instigation another was arrested could escape responsibility for a false arrest and detention by showing that he had induced a police officer to believe a false statement of another's connection with a crime, so that the police officer would be justified in believing such false statement in making the arrest. That the police officer was justified does not justify the individual who induced the officer to make the arrest."

We are fully in accord with this reasoning.

Of course the evidence offered by the defendants may place an entirely different complexion upon the transaction, but this is conjecture merely. No testimony directly implicating the conductor of the Pennsylvania Railroad appears in the record, but there was some conflict as to which defendant the different officials owed allegiance and, as

the proof may be changed upon a new trial, we deem it more prudent to leave the question of the liability of the Pennsylvania Railroad to be determined by the trial court.

The judgment is reversed.

LACOMBE, Circuit Judge. I am unable to concur for these reasons:

1. Although the state courts hold that the action of false arrest will lie against the person who induces the officer to make the arrest, although it be made under such circumstances that the officer is not responsible, I understand the federal decisions to be the other way. Reisterer v. Lee, Sum, 94 Fed. 343, 36 C. C. A. 285; Van v. Pacific Coast Co. (C. C.) 120 Fed. 699. These cases hold that, if arrest without process be lawful, the person procuring such arrest to be made is not liable in an action for false imprisonment.

2. As I read the Pennsylvania statute, it was not necessary for the officer to have any personal knowledge of the alleged offense; notification that an offense had been committed was sufficient.

3. The circumstance that having made the arrest, the officer subsequently failed in his duty by neglecting to take the prisoner at once to a magistrate, should not operate to the prejudice of the person who made the complaint, and who, presumably supposed the policeman would do his duty.

4. In case where arrest can be made only on written warrant issued by a magistrate the person on whose complaint the warrant is issued may, if the facts justify such an action be sued for malicious prosecution. I am at a loss to see why, when the statutes of a state authorize arrest without warrant upon the oral information or complaint of some one, the person who by his complaint brings about the lawful arrest is not as much "prosecuting" the prisoner as he would be if he procured the issue of a written warrant. Manifestly, the proceedings following upon the complaint made by the Pullman conductor have terminated, and, since they did not terminate adversely to the person arrested, they would seem to have terminated favorably.

I think defendant Pullman Company upon the facts shown here would be liable in an action for malicious prosecution, but cannot be held liable in an action for false imprisonment.