(No. 6079. March 11, 1935.)

FRANCIS D. GRIFFIN, and IVEL GRIFFIN, Plaintiffs and Respondents; MARIE WILLIAMS, Cross-Complainant and Respondent, v. EARL CLARK and ESTHER MAY CLARK, Defendants and Appellants.

[42 Pac. (2d) 297.]

Elam & Burke, Robert E. Leitch and Wm. Healy, for Appellants.

George Donart and Herman Welker for Respondent Griffin.

D. L. Carter and Frank C. McColloch, for Respondent Williams.

BUDGE, J.—On the evening of September 25, 1932, on the highway between Payette and Weiser, a collision occurred between the car of the Griffins and the car of one Ed North, in which Ed North, respondent Marie Williams, and appellants Clark were riding. Ed North was killed in the collision. Thereafter this action was commenced by the Griffins against appellants and Marie Williams for the recovery of damages sustained. Eventually respondent Marie Williams became a cross-complainant, seeking recovery against her co-defendants, the appellants. The cause was tried to the court and a jury and resulted in verdicts in favor of the Griffins against appellants and in favor of respondent Marie Williams against appellants, upon which verdicts judgments were entered. Appeals were perfected by appellants from both judgments and thereafter the following stipulation was filed in this court:

"IT IS HEREBY STIPULATED that the claim and judgment of plaintiffs, Francis D. Griffin and Ivel Griffin, have been settled and satisfied, and that the Supreme Court need not consider the issues of the appeal herein so far as said Francis D. Griffin and Ivel Griffin are concerned."

The cause is before this court upon the appeal from the judgment in favor of respondent Marie Williams.

With relation to respondent the facts are substantially as follows: On Saturday evening respondent arrived in Payette from Baker to visit appellants. Upon arrival she first saw Ed North, who was acquainted with appellants, and respondent asked him where appellants lived, whereupon he offered to, and did, drive her past appellants' home, but seeing no light North took her to Ontario, where she remained the night. In the morning North called for, and drove, respondent to appellants' home in Payette. The record discloses respondent had to be at work in Baker the following morning and that North offered to take her there in his car, which proposal respondent

refused. About 5 o'clock respondent called and inquired about train and bus times and learned the train left Payette about 6 in the evening and the bus about 1 o'clock in the morning. It appears that Mrs. Clark "seemed to hesitate" when respondent asked her to take her to the train and that North offered to and took her to the depot about 6. A few minutes thereafter, "probably five minutes," North returned to appellants' residence and said: "Grab or take your coats and we will go to Weiser and take Marie off the train." Appellants, without argument, immediately acquiesced and North and appellants proceeded at once to Weiser, arriving about the same time as the Portland Rose train on which respondent was riding. It appears that while respondent was looking out the window North boarded the train, grabbed respondent's bag, started to leave the train and said, "I do not want you to go home on this train." The record then discloses the following from the testimony of respondent:

"For a moment I did not know what to do; and then, he had my bag so I went after it."

"He got off the coach and I could not catch up with him until he got half way around the station, and then I caught up with him and asked for my handbag as I wanted to go on to Baker."

North said: "We will take you."

"He kept on going and when I got around the station I saw the Clarks in the car there."

One of the occupants of the car (Mr. or Mrs. Clark) took the bag from Mr. North and "put the handbag in the back seat."

"Q. What had happened to your train in the meantime.

"A. It had pulled away from the station.

"Q. About when did it pull away with respect to the arrival of yourself and Mr. North at the automobile.

"A. I was still standing outside the car."

The record further discloses that respondent had never before been in Weiser, that she had no friends in Weiser, and she further testified:

"I only had five dollars and some small change and did not know anyone in Weiser, and I was not sure whether the bus went through Weiser."

"Q. Why did you not seize your baggage before the train's departure.

"A. I could not get it. I was trying to.

"Q. And after the departure of the train why did you not get your baggage and go away from the party.

"A. For that reason: I did not have much money and it was almost four dollars for a ticket."

Respondent's willingness to the proposed scheme is summed up in the following testimony:

"Q. Did you willingly leave the railroad coach upon which you were traveling.

"A. I certainly did not.

"Q. Did you willingly enter the Auburn automobile.

"A. Not willingly. There was people around there, and I did not want to start any commotion.

"Q. Did you willingly at any time participate in anything happening after your baggage was taken from the railroad coach until the time of the accident.

"A. Certainly not. I had the opportunity to go in that car in the afternoon, and I would not have paid four dollars out for a ticket to go home. I had a chance to ride in that car for nothing."

"Q. Now, when you got out to the car were you smiling or frowning.

"A. I presume frowning because I did not like it very well.

"Q. As a matter of fact were you not smiling.

"A. I was not."

Appellant Clark testified that respondent as she approached the car at the depot did not seem happy over the situation, and Mrs. Clark likewise stated she did not look happy and smiled "a sickly smile." It further appears from the record that appellant Clark, after the foregoing events occurred, expressed himself as not desiring to make the trip to Baker and the parties then drove some

three or four blocks from the depot, stopped at the apartment of Miss Grant where arrangements were made, without the hearing of respondent and without her participation therein, to the effect that North would drive appellants back to Payette, and would then pick up Bill Sodja and a young lady upon his return to Weiser, which couple would accompany respondent and North to Baker. Respondent later learned of this arrangement from Mr. Clark at the time they were starting to Payette. On the trip from Weiser to Payette for the purpose of returning appellants to their home the collision occurred.

Respondent sought recovery upon the theory that appellants, as a part of a joint enterprise and adventure with North, unlawfully restrained her freedom of locomotion, causing her by coercion and duress to leave the train by forcibly taking her hand baggage, whereupon she left the train, the train departed from the station, leaving her in custody and control of appellants, and that by reason of such coercion and duress and against her wish and will she was then required to enter the automobile, and thereafter while said automobile was being driven and operated negligently by one of the members of the joint enterprise she received the injuries resulting in her damage.

Assignments of error 2, 4, 5, 7, 8, 13, 14, 15 and 17d have application to the appeal from the judgment in favor of respondent Marie Williams. Assignments 2, 4, 6, 8, 14 and 15 are respectively to the following effect: That the court erred: In overruling appellants' motions, (2) for nonsuit, and (4) for judgment in favor of appellants against respondent, notwithstanding the verdict; in refusing to instruct, (6) that the evidence was insufficient to justify a verdict in favor of respondent, and (8) that there was no joint enterprise between appellants and North; (14) in giving instruction number 13, and (15) the insufficiency of the evidence to establish either unlawful restraint or participation therein by either of appellants, or to establish any right of control over the operation of the car or driver. These assignments relate to the sufficiency of the evidence

in the above-mentioned particulars and the correctness of instruction number 13, given in relation thereto, and may well be considered together. The argument of counsel is along two related lines, namely, a combination of unlawful restraint and joint adventure in the operation of the automobile, and, secondly, the liability of joint tort-feasors in an unlawful restraint, ignoring any question of joint adventure in the operation of the automobile. It first becomes necessary to determine whether there was sufficient evidence to submit to the jury the question of unlawful restraint. By reason of the nature of the offense, most cases involving false imprisonment or unlawful restraint relate to the efforts of peace officers to apprehend suspected criminals, nevertheless the fundamental elements of the offense may be found in such cases. I. C. A., section 17–1215, defines "false imprisonment" as follows:

"False imprisonment is the unlawful violation of the personal liberty of another." (*Ludwig v. Ellis*, 22 Ida. 475, 126 Pac. 769.)

The essential elements of false imprisonment are set forth in section 35 and subsequent sections, vol. 1, Restatement of the Law of Torts, as follows:

"(1) An act which, directly or indirectly, is a legal cause of a confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other irrespective of whether harm is caused to any legally protected interest of the other, if

"(a) The act is intended so to confine the other or a third person, and

"(b) the other is conscious of the confinement, and

"(c) the confinement is not consented to by the other, and

"(d) the confinement is not otherwise privileged."

"*What Constitutes Confinement.*

"(1) To make the actor liable for false imprisonment under the rule stated in section 35, the others' confinement within the boundaries fixed by the actor must be complete.

"(2) The confinement is complete although there is a reasonable means of escape unless the actor knows thereof. . . . .

"Since the actor has intended to imprison the other, the other is not required to run any risk or harm to his person or to his chattels or of subjecting himself to any substantial liability to which his intentional misconduct has subjected him. So too, even though there may be a perfectly safe avenue of escape, the other is not required to take it if the circumstances are such as to make it offensive to a reasonable sense of decency or personal dignity. . . . . "

"(c) If the actor by force or threats thereof or by exerting legal authority compels another to accompany him from place to place, he has as effectively confined another as though he had locked him in a room. So too, the fact that the place of confinement is itself in constant motion, as where the other against his will is forcibly made to go on a sea voyage, does not prevent his confinement from being actionable under the rule stated in section 35." (Section 36, Restatement of the Law of Torts.)

*"Confinement; How Caused.*

"If an act is done with the intent stated in section 35 (1, a) and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement. . . . .

"Comment.

"a. If the actor's intention is to confine another, it is immaterial that the manner in which his intention is carried out is indirect rather than direct. Thus, one who digs a pitfall in another's path is as fully liable if the other fall into it and is unable to get out, as if he had thrown the other into the pit." (Section 37, Restatement of the Law of Torts.)

In false imprisonment or unlawful restraint the primary right involved is the liberty of the citizen—the right of freedom of locomotion—the right to come and go or stay, when or where one may choose. In the main the authorities disclose that in order to constitute an unlawful

restraint or false imprisonment the essential thing is the restraint of the person. The statute defines it as "the unlawful violation of the personal liberty of another." (I. C. A., sec. 17–1215, *supra.*) The true test seems to be not the extent of the restraint, nor the means by which it is accomplished, but the lawfulness thereof. There need be no actual force or threats, nor injury done to the individual's person, character or reputation. Neither is it necessary that the wrongful act be committed with malice or ill will or even with the slightest wrongful intention. Nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty,—compelled to remain or go where he does not wish to,—prevented from moving from one place to another as he may deem proper and desire,—without sufficient authority, either directly or indirectly in any manner or by any means,—by words alone, by acts alone, or by both, by merely operating on the will of the individual, through reasonable fear of personal difficulty, by actual or apparent force, etc., and the detention must be against the will of the person detained. (11 R. C. L. 793; 25 C. J., sec. 1, p. 443; 25 C. J., secs. 5–11, p. 448; 19 Cyc., pp. 319–323; Black's Law Dictionary, 3d ed., p. 926; Waterman on Trespass, vol. 1, p. 264, secs. 293, 294; *Giroux v. State,* 40 Tex. 97; *Gold v. Campbell,* 54 Tex. Civ. App. 269, 117 S. W. 463; *Whitman v. Atchison, T. & S. F. Ry. Co.,* 85 Kan. 150, 116 Pac. 234, Ann. Cas. 1912D, 722, 34 L. R. A., N. S., 1029; *Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005; *Comer v. Knowles,* 17 Kan. 436, 440; *Cullen v. Dickinson,* 33 S. D. 27, 144 N. W. 656, Ann. Cas. 1916D, 115, 50 L. R. A., N. S., 987; *Harris v. Stanioch,* 150 Wash. 380, 273 Pac. 198; *Cordell v. Standard Oil Co.,* 131 Kan. 221, 289 Pac. 472; *Vandiveer v. Charters,* 110 Cal. App. 347, 294 Pac. 440; *Moore v. Thompson,* 92 Mich. 498, 52 N. W. 1000; *Daniels v. Milstead,* 221 Ala. 353, 128 So. 447; *Riley v. Stone,* 174 N. C. 588, 94 S. E. 434, 440.) In *Cordell v. Standard Oil Co., supra,* in which case it was held not error to deny a

motion for judgment on the pleadings and trial statement, the court used the following language:

"There was no allegation or statement that the agent of the defendant or the police officers put their hands on the plaintiff, but the trial statement did show that the agent of the defendant removed the water from the radiator of the automobile and did not refill the radiator until he was ready to permit the plaintiff to leave. It was not necessary that an assault be committed on the plaintiff in order to constitute restraint for which the defendant would be liable."

"Imprisonment is any restraint of the personal liberty of another; any prevention of his movements from place to place, or his free action according to his own pleasure and will; a man is imprisoned when he is under the control of another in these respects, or either of them, against his own will. It is false imprisonment when this is done without lawful authority." (*Johnson v. Tompkins*, 13 Fed. Cas. No. 7416.)

We are of the opinion that there was sufficient evidence to present to the jury the question of whether respondent's personal liberty was unlawfully restrained or violated by the acts and conduct of North and appellants. There is evidence that there was an intention, known by and entered into by appellants, to take respondent from the train and thence by the North automobile to Baker, and that her removal, while not accomplished by means of physical force or assault, was effected by the removal of her personal property, of which she attempted to regain possession, which means effectively produced the intended result. There is evidence that "in the meantime" the train departed, closing the avenue of travel respondent had chosen and which respondent had previously determined upon as being to her best interest with relation to her employment, and that this was the only means of travel respondent was aware would take her from Weiser to Baker within the time fixed by her to arrive at Baker, other than that provided by the North automobile. She "was not sure whether a bus went through Weiser." Respondent stated "there was people around there

and I did not want to start any commotion," and she therefore, against her will, adopted the means of travel provided. With reference to participation on the part of appellants, in addition to the evidence to the effect that appellants were directed to "grab or take your coats and we will go to Weiser and take Marie off the train," which proposition was immediately accepted and acquiesced in without argument, the record further discloses that one of appellants took the bag from North and put it in the back seat of the automobile. Again, it was through the efforts of appellants that the course of the journey was changed to proceed from Weiser to Payette, rather than to Baker. It was for the jury to determine as a question of fact from the evidence whether respondent was detained as alleged in her cross-complaint, whether or not the detention was voluntary or involuntary, and the connection, if any, of the appellants in the unlawful acts complained of, and the existence of facts relied upon as a justification or exoneration from liability. (25 C. J., sec. 157, p. 548.)

■ ■ Appellants urge there is no evidence showing or tending to show an equal right to direct and control the operation of the car and the conduct of the driver, and therefore that the evidence was insufficient to disclose a joint enterprise in this respect between North and appellants. It does not appear altogether certain that the jury were constrained to determine that there was a joint enterprise existing with relation to the operation of the automobile, as will be hereafter referred to. In any event, it would appear that there was some evidence of joint enterprise in the respect here referred to. The general rule appears to be that in order to constitute a joint enterprise with relation to the operation of an automobile there must be a joint interest or community of interest in the purpose of the undertaking, and an equal right, express or implied, to exercise some control over the conduct of each other in respect thereto. (Section 644, Berry on Automobiles, p. 512; Cooley on Torts, 4th ed., vol. 3, sec. 492, p. 437; Huddy Encyclopedia of Automobile Law, vol. 5–6, sec. 148,

p. 285; *Wiley v. Dobbins,* 204 Iowa, 174, 214 N. W. 529, 62 A. L. R. 432; *Wentworth v. Town of Waterbury,* 90 Vt. 60, 96 Atl. 334.) By reason of the conclusion heretofore reached with reference to unlawful restraint on the part of appellants it appears that there was evidence of a joint interest in the purpose of the undertaking. There is evidence that the North automobile was one of the instrumentalities to be used in carrying out the purpose of the undertaking, and before the completion of the undertaking appellants did have and exercised some power of control over the driver and the operation of the automobile, inasmuch as the course of the journey, in furtherance of the unlawful restraint, in which appellants had thus far participated, was completely changed in direction,. going to Payette from Weiser instead of to Baker. When all the evidence is considered we believe there was sufficient evidence upon which the jury could find that there existed a joint enterprise between North and appellants with relation to the operation of the automobile in furtherance of the common undertaking.

By their argument appellants in effect urge that to entitle respondent to recover from appellants there must be shown to exist a joint enterprise between North and appellants in the operation of the automobile. In other words it is urged that regardless of participation by appellants in an unlawful restraint, appellants cannot be held liable unless they also were engaged in a joint enterprise in the driving of the automobile, inasmuch as respondent's injuries resulted because of the allegedly negligent manner of operation of the North automobile. It would appear that such argument is not well founded, and that appellants may have lost sight of the fact that a joint enterprise in the unlawful restraint was alleged. It would appear that the real question presented in this respect was whether the unlawful restraint, or the alleged negligent. manner in which the automobile was being driven, was the proximate responsible cause of respondent's injury and damage. (62 C. J., sec. 30, p. 1115.) It is to be borne in mind that we are not confronted with the alleged negli-

gence of a third and disinterested party to the original tort, or negligence, intervening and causing an injury. It was at least the alleged negligence of North, one of the parties participating in the unlawful restraint, if any, and in furtherance or continuation of the original purpose, which resulted in respondent's injury. The general rule would seem to be that where several persons unite in an act which constitutes a wrong to another (joint tort-feasors), intending at the time to commit it, or doing it under circumstances which fairly charge them with intending the consequences which follow, each must assume and bear the responsibility of the misconduct of all.

"Where several persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or doing it under circumstances which fairly charge them with intending the consequences which follow, it is a very reasonable and just rule of law which compels each to assume and bear the responsibility of the misconduct of all. To require the party injured to ascertain and point out how much of the injury was done by one person and how much by another, or what share of responsibility is fairly attributable to each as between themselves, and to leave this to be apportioned among them by the jury according to the mischief found to have been done by each, would in many cases, be equivalent to a practical denial of justice. The law does not require this, but on the other hand permits the party injured to treat all concerned in the injury as constituting together one party, by their joint cooperation accomplishing certain injurious results, and liable to respond to him in a gross sum as damages.

"But while the law permits all the wrongdoers to be proceeded against jointly, it also leaves the injured party at liberty to pursue any one of them severally, or any number less than the whole. . . . . " (Cooley on Torts, sec. 81, p. 251, vol. 1, 4th ed.)

62 C. J., sec. 44, p. 1130; 24 Cal. Jur., sec. 6, p. 597.

"The acts which will give rise to an action may be classified as follows: . . . .

"(3) an injurious act or omission not done or omitted with any intent to produce harm, nor in the invasion of any distinct or absolute right of another, nor in violation of any positive law or special or absolute obligation; but which, in the exercise of due diligence and skill, might have been forseen and prevented, and the person upon whom the injury has fallen may have been one for whose safety and protection the defendant was, at the time, under some qualified or limited obligation." (26 R. C. L., sec. 3, p. 757.)

"Where several persons acting in concert engage in a common unlawful enterprise all are answerable for any injury done by either, though the damage done was greater than was foreseen, or the particular act done was not contemplated or intended by them, . . . . " (26 R. C. L., sec. 15, p. 767.)

See, also, 26 R. C. L., sec. 13, p. 763; *Kirkwood v. Miller,* 5 Sneed (Tenn.), 455, 73 Am. Dec. 134; *Richardson v. Emerson,* 3 Wis. 319, 62 Am. Dec. 694.

■ All those who directly participate in an unlawful detention are joint tort-feasors. (*Knight v. Baker,* 117 Or. 492, 244 Pac. 543; *Grimes v. Greenblatt,* 47 Colo. 495, 107 Pac. 1111, 19 Ann. Cas. 608; *Polonsky v. Pennsylvania R. Co.,* 184 Fed. 561, 106 C. C. A. 541; 25 C. J., secs. 69, 70, pp. 497, 498.)

■■ Negligence was defined by the court and the jury was instructed that the rule applied alike to all parties to the action in determining whether either was negligent. The court further defined proximate cause[1] and submitted to the jury the question of the negligence of appellants and respondent Marie Williams and the question of proximate

[1] "A proximate cause is one from which the injury complained of is the ordinary and natural result, and is usual and might have been reasonably expected to occur from such cause. In order to warrant a finding that negligence is the proximate cause of an injury, it should appear that the injury was the natural and probable consequence of the negligent act, and that it ought to have been foreseen —not necessarily the precise actual injury, but some like injury likely to result therefrom."

cause.[2] The jury by its verdict undoubtedly found that the negligence of appellants was the proximate cause of respondent's injuries. The jury was instructed upon the question of joint enterprise. Appellants in their brief concede that joint enterprise was properly defined.[3] The court also instructed the jury that if two or more persons engaged in a joint enterprise be guilty of negligence which is the proximate cause of injury and damage to a third party all engaged in the joint enterprise are equally liable,[4] and the court also advised the jury that if appellants were not engaged in a joint enterprise the negligence of the driver of the car could not be imputed to them.[5] The jury was instructed that no one instruction stated all the law, but that the instructions were to be taken and considered as a whole. Reading all of the instructions covering the question of unlawful detention of respondent and the instructions with reference to whether or not appellants were engaged in a joint enterprise in connection with instruction

[2] "The negligence on the part of a defendant which may entitle a plaintiff to recover for injuries, must be the proximate cause of plaintiff's injuries; and if such negligence on the part of a defendant is shown, then a plaintiff cannot recover if the evidence further shows that his own negligence was also a proximate cause of such injuries."

[3] "You are instructed a 'joint enterprise,' as that term is used in these instructions, is not shown to exist by the fact that a guest and the driver each sought the same destination and by means of the same conveyance. There must be more than such common desire and common method of transportation. There must be a community of interest in the objects or the purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

[4] "You are instructed that if two or more persons are engaged in a joint enterprise as defined in these instructions, and one or more of such persons be guilty of any negligence which is the proximate cause of injury and damage to some third party, then all of those engaged in such joint enterprise are liable for the damage proximately resulting from the negligence of one or more of their number."

[5] "If you find from the evidence that at the time of the accident here in question the defendants were not engaged in a joint enter-

No. 13,[6] we are of the opinion that said instruction is not erroneous, but taken in connection with all other instructions the jury were fully instructed as to what constituted unlawful restraint as well as a joint enterprise. It was a question of fact for the jury to determine what was the proximate cause of the injury, and also to find the natural and probable consequences that could reasonably be expected to follow the commission of the tort.

 Referring to assignments 2, 4 and 6: An instruction which directs a verdict has the same effect as an order sustaining a motion for nonsuit. In effect it instructs the jury that there is no evidence to support the claim of the party against whom such verdict is directed. (*Smith v. Marley*, 39 Ida. 779, 230 Pac. 769; *Pocatello Security Trust Co. v. Henry*, 35 Ida. 321, 206 Pac. 175, 27 A. L. R. 337; *Moody v. Morris-Roberts Co.*, 38 Ida. 414, 226 Pac. 278.) I. C. A., section 7–224, provides for the granting of a motion for judgment notwithstanding the verdict "if the moving party was entitled to such direct(ed) verdict." ·(*Hendrix*

---

prise, the negligence of the driver of the car in which they were riding, if any, cannot be imputed to them."

[6] "You are instructed that if you find from the evidence that Ed North and the defendants Earl Clark and Esther May Clark, or either of said defendants, unlawfully restrained the cross-complainant Marie Williams in her right of freedom of locomotion and detained her against her will, and that while she was so restrained and detained she was required to enter and ride in an automobile driven and under the control of said Ed North and the said defendants or any of them, and that while so riding in said automobile she was injured through the negligence of said Ed North or said defendants, then said Marie Williams is entitled to recover from defendants for the injuries so sustained by her.

"On the other hand, if you find that said Marie Williams entered said automobile and was riding therein of her own volition and without restraint by said defendants, then she cannot recover upon her cross-complaint.

"Any intentional conduct on the part of one person that results in placing another person in a position where such person cannot exercise her will in going where she may lawfully go, constitutes an unlawful restraint within the meaning of this instruction."

*v. City of Twin Falls*, 54 Ida. 130, 29 Pac. (2d) 352.) Directed verdict is proper only when there is no question of fact for the jury. (*Adams County v. Meadows Valley Bank*, 47 Ida. 646, 277 Pac. 575.) A plaintiff should not be nonsuited unless it appears that the evidence in his behalf, upon the most favorable construction the jury would be at liberty to give it, would not warrant a verdict for him. (*Wyland v. Twin Falls Canal Co.*, 48 Ida. 789, 285 Pac. 676; *Miller v. Gooding Highway Dist., ante,* p. 258, 41 Pac. (2d) 625 (filed Feb. 15, 1935).) There was no error in the above-mentioned particulars.

We have examined the errors assigned other than those discussed, but in view of the conclusion reached a discussion thereof does not appear necessary.

From what has been said it follows that the judgment should be affirmed and it is so ordered. Costs awarded to respondent.

Givens, C. J., Morgan and Holden, JJ., and Koelsch, D. J., concur.