## ROBBINS *v.* HORN.

Opinion delivered October 25, 1920.

FRAUDS, STATUTE OF—SALE OF GOODS.—A sale of seventy-six bales of cotton was within the statute of frauds (Kirby's Dig., § 3656) where there was no memorandum of the sale, no payment, and no delivery, either actual or symbolic.

Appeal from Pike Circuit Court; *James S. Steel,* Judge; affirmed.

*D. B. Sain,* for appellant.

It was error to direct a verdict. The court did so on the theory that A. E. Alford was a special agent of Horn Brothers and that a principal is not liable for the acts of a special agent. The distinction between a special agent and a general agent is well settled. 55 Ark. 629; 25 *Id.* 261. Alford was the agent of Horn Brothers to sell the specific cotton he sold to appellant and he was within the rule binding a principal by the acts of a special agent. 81 Ark. 202; 104 *Id.* 150. The principal is liable for the acts of the agent within the scope of his authority. 23 Ark. 32, 289. The admissions of an agent made within the scope and during the existence of his agency bind the principal. 6 Ark. 138. Alford acted within the scope of his powers. He had only one mission to perform and that was to sell the cotton of Horn Brothers. 81 Ark. 202. A principal is bound by the acts of his agent within the scope of his apparent power, unless the persons dealing with the agent have notice of his authority. 49 Ark. 320. See, also, 90 *Id.* 294; 51 *Id.* 483; 100 *Id.* 360; 78 *Id.* 209; 112 *Id.* 63.

The fact of agency may be proved by circumstantial evidence (93 Ark. 600), or by the evidence of witnesses who know the facts. 80 Ark. 228; 90 *Id.* 104; 96 *Id.* 505; 126 *Id.* 405.

Delivery was proved by the delivery of samples, as is the universal custom. No manual delivery of cotton is feasible. Appellant carried out his contract as far as it was in his power to do. 19 Ark. 566. The sale was complete. 91 *Id.* 240. Symbolic delivery, where property is too bulky or ponderous to be capable of actual delivery. 102 *Id.* 344. The title passes when the parties intend it shall pass, even though the thing sold does not pass from the seller to the buyer at the time of the sale or price paid. 106 *Id.* 482.

*W. T. Kidd,* for appellee.

There was not sufficient evidence to warrant a submission of the case to a jury. The evidence is undisputed and the court properly instructed a verdict. 57 Ark. 461; 67 *Id.* 147; 90 *Id.* 439; 119 S. W. 662. Here there was no delivery, actual or constructive. There is nothing in the record to show any transfer of title or possession. There was not even a demand upon the warehouseman for the delivery of the cotton and no actual or constructive delivery to appellant and he never acquired any title. Kirby's Dig., § 529; 6 Cyc. 424; 88 Tex. 195; 4 A. & E. Enc. Law. (2 ed.), 546; 50 Ark. 20; 56 *Id.* 98; 68 *Id.* 244; 24 *Id.* 28; 96 U. S. 467; 44 Ark. 302-3. There was no completed sale. Kirby's Digest, § 3656; 66 Ark. 135; 91 *Id.* 240.

The sale was void under the statute of frauds. Kirby's Digest, § 3656; 76 Ark. 395; 79 *Id.* 338; Browne, Stat. Frauds (5 ed.), § 320; Benjamin on Sales, § 145; 1 Mechem on Sales, §§ 375-384; 118 Mass. 143; 60 Conn. 363; 12 Am. Rep. 55; 96 Am. St. 214; 96 *Id.* 216;. See, also, 129 Mass. 422; 96 Am. St. 225.

Samples not regarded as part of the goods sold, and delivery of samples not a delivery of the cotton. 70 L. R. A. 321. See, also, 123 Mass. 141. Alford was not the

agent of Horn Brothers. 62 Ark. 33; 92 *Id.* 315; 105 Ill. .........; 117 Ark. 173; 111 *Id.* 229. One who deals with a special agent is bound to ascertain the extent and nature if his authority. 62 Ark. 33; 23 *Id.* 411; 55 *Id.* 627. Appellant's own testimony shows he was not entitled to recover.

Wood, J. This action was instituted by the appellant against the appellees and one T. E. Alford. The appellant alleged that he purchased from T. E. Alford 214 bales of cotton; that at the time he purchased the cotton Alford furnished him with samples on which he relied in making the purchase; that T. E. Alford was the agent of Horn Bros. in the sale of 76 bales of the cotton, which they refused to deliver to the appellant; that he purchased the cotton for resale and sold the same at 32½ cents a pound; that Alford and Horn Bros. refused to deliver to appellant, or his vendee, the cotton, which resulted in his damage in the sum of $1,140, for which sum he asked judgment.

The appellees and Alford filed answers in which they denied all material allegations of the complaint and pleaded the statute of frauds. The facts are substantially as follows:

Alford was the owner of 141 bales of cotton stored in a warehouse in Little Rock, and appellees owned 76 bales of cotton also stored in a warehouse in Little Rock. Alford lived at Glenwood and Horn Bros. (appellees) were in business at Caddo Gap. Appellant was in the cotton business at Hope, Arkansas. Alford met the appellant in Little Rock. Ten or fifteen days before Alford went to Little Rock, the appellees had requested him to sell their cotton when he sold his. Alford sold his cotton to appellant for 32 cents per pound and sold the cotton of appellees at 31½ cents per pound.

Alford testified in regard to the delivery substantially as follows: He had never seen the samples. He told appellant where they were. When he made the sale, he considered that it was the other man's cotton. Witness did not go to see the samples. Appellant knew

where they were. He called at the bank and took up the samples of witness' cotton and made the remark that he knew where Horn Bros. samples were. Witness carried out the contract he made with Horn Bros. in perfecting the sale to appellant the way that he thought it would be agreed upon. As soon as witness got in communication with the appellees, they objected to the sale. It was about the second or third day thereafter. Witness further testified regarding the delivery that, as far as he knew, the warehouse receipts were not delivered to the appellant. Witness understood that the receipts were at the Bank of Glenwood. Appellant never paid witness anything on appellee's cotton. Witness remarked to the appellant at the time he sold him appellee's cotton that if he couldn't get but 31½ cents, he would let appellant have it, but didn't know what appellees would think about it. He did not wire the appellees on that day and tell them what he was offered for the cotton before selling the same to the appellant. There was other testimony corroborating the testimony of Alford to the effect that the appellees had requested Alford to sell their cotton when he sold his.

The appellant testified that it was the custom in most towns, especially in Hope, where he was in business, for cotton to be sold by samples; that it was impossible to sell it in any other way; that delivery was made by a delivery of the sample; that where country cotton is bought the cotton is bought by sample and paid for by drawing a draft on the man for whom you buy. Appellant met Alford in Little Rock and went down to look at his cotton. Alford told witness where the appellees' samples were. He examined the two lots of cotton thoroughly. Alford told witness that the cotton belonged to him, appellees, and a man named Byrd. He made Alford a price, and Alford sold witness his cotton, and remarked, "I ought to sell Horn's. He told me to, but I don't know about it." Witness replied, "All right, if you don't want to sell, maybe you'd better not." Later Alford told witness that he wished to sell Horn's cotton,

and witness said he would take it. Alford told witness that the tickets to appellees' cotton were at the Bank of Glenwood. Witness told Alford that "the cotton would have to be 'kicked clear;' known in cotton terms, 'clear of compress, Little Rock, 1, 2 and 3.'" He asked Alford when he went home to tell Mr. Hallman (of the Bank of Glenwood) to have appellees' tickets there and witness would see that it was loaded out of Little Rock properly. In regard to the delivery of the samples the witness further testified as follows: "He (Alford) told me where to find the samples. I went up to Block-Stevens Company, brokers. I handed their negro $1 and told him to go get the samples. He brought them back and I had them sacked and sent to Hope. Each sample has a sample and a coupon in the middle. There is a sample on both sides and coupon in the middle. That represents the number and bale of cotton. The coupon corresponds with the number on the bale. The samples represent one bale and they were delivered to me and I shipped them to Hope, and in the meantime I sold the cotton to E. C. Brown & Company. I delivered Mr. Brown the samples. The tickets to me were to be drawn by draft from the Bank of Glenwood and from the German National Bank of Little Rock. When the tickets to the Alford cotton came I delivered them to Mr. Brown." Witness then states that the Horn cotton was never delivered to witness. Witness paid Alford all that he drew on him for. He had sold the cotton and delivered the samples and when witness settled with Brown & Company he paid him the difference caused by the failure of appellees to deliver their cotton. The loss and the profit he would have made had the same been delivered would have been $1,140.

Witness Anderson testified that he worked for E. C. Brown & Company. The company bought 214 bales of cotton from appellant. The cotton turned up short 72 or 73 bales. The samples were sent in by express to appellant and appellant brought the samples and sold to E. C. Brown & Company. Cotton is delivered by sam-

ples. Witness didn't know anything about the appellees' cotton. It was delivered to E. C. Brown & Company by samples. The company shipped what it got, but it didn't get all of it. The appellant made the loss good to E. C. Brown & Company. Witness further testified that when a man buys cotton it is delivered to the purchaser by warehouse receipts. A man may sell cotton and not have the warehouse receipts with him. When the seller draws on the purchaser by draft, the only way for the purchaser to get possession of the cotton is to pay the draft and get the warehouse receipt. The warehouse receipts are kept by the owner in his possession. Every bale of cotton has a ticket. The sample has a coupon and represents the bale and the number. The tickets—compress receipts—come attached to a draft, or if they are there and delivered by the seller in person, the purchaser gives the seller a check for them, and they take it to the bank, and it is paid. The cotton tickets represent every tag in those samples; the coupon is in the sample representing the ticket. The man that owns the cotton has the ticket. If the seller lives out of town, he draws on the purchaser with the tickets attached to the draft. The purchaser doesn't get possession of the cotton until the tickets are delivered.

The court instructed the jury to return a verdict in favor of the appellee, which was done. Judgment was then entered dismissing the appellant's complaint, from which judgment is this appeal.

The testimony tended to prove, and it may be conceded for the purposes of this case, that Alford was the agent of appellees and had authority to sell their cotton. Nevertheless, the undisputed testimony shows that there was no completed sale. The alleged contract for the sale was void under the statute of fraud, for the undisputed evidence shows that there was no memorandum of the sale signed by the appellees or their agent; that the cotton was not delivered by the appellees, or their agent; that nothing was paid by the appellant to the appellees, or their agent on the purchase price. Nor was

there any actual or symbolic delivery of the cotton by the appellees, or their agent, to appellant. Section 3656, Kirby's Digest.

"A receipt and acceptance of goods under an oral contract of sale to satisfy the statute of frauds implies a delivery; and there must be such a delivery by the vendor and receipt by the vendee of the goods sold as shows an intention on the part of the parties to vest in the vendee the possession and right to possession discharged of all lien for the price." *Devine* v. *Warner*, 96 Am. St. Rep. 216. See, also, *Rogers* v. *Jones*, 129 Mass. 422; *Taylor* v. *Godbold*, 76 Ark. 395; *Hodges* v. *Nall*, 66 Ark. 135; *Walnut Ridge Mercantile Co.* v. *Cohn*, 79 Ark. 338.

The undisputed evidence shows that warehouse receipts had been issued for this cotton, and these receipts were in possession of the Bank of Glenwood. They had never been endorsed and delivered to the appellant. Under these circumstances, there could be no actual or constructive delivery of the appellees' cotton to the appellant. See sections 5229-5230, Kirby's Digest.

The judgment is in all things correct, and it is therefore affirmed.