LEE WILSON & COMPANY *v.* SPRINGFIELD.

5-1841                              321 S. W. 2d 775

Opinion delivered March 16, 1959.

*Oscar Fendler,* for appellant.

*James E. Hyatt, Jr.* and *Marcus Evrard,* for appellee.

SAM ROBINSON, Associate Justice.    This suit was filed by appellant, Lee Wilson & Company, against appellees, Baker D. Springfield, his wife, Ethel Springfield, and his sister, Jane Springfield, and Cecil Earls. The complaint alleges in substance that appellee Baker D. Springfield, hereinafter referred to as Baker, owned a 460 acre farm and approached appellant with the idea of selling the land and the farming equipment if he could realize as much as $35,000 after the payment of debts and taxes; that in consideration of appellant's allow-

ing its auditor, Mr. D. D. Cash, to check into Springfield's affairs, including the debts owed and amount of taxes that would have to be paid, Baker agreed to give appellant the "right of refusal" to purchase the land and equipment at a figure that would net Springfield about $35,000 after the payment of debts and taxes. In addition, the complaint alleges that appellee Jane Springfield, sister of Baker, owns a 490 acre farm adjoining Baker's property; that Baker has been renting this property from his sister and farming it and he agreed that in the event Wilson & Company exercised the alleged option to purchase Baker's property, appellant would have the right to rent Jane's farm for $25 per acre per year, for five years, with the right to renew the lease for an additional five years. The complaint alleges that pursuant to this agreement, Cash, appellant's auditor, put in several days work determining the status of Baker's financial affairs, computing the income tax that would have to be paid, and ascertaining the balance that would be left net to Baker. It is alleged that after this work had been completed by Cash, Baker entered into a deal to sell the property, both real and personal, to appellee Earls for the sum of $214,000 and to rent him Jane Springfield's land.

It is alleged that by entering into the agreement with Earls, Baker breached his contract with appellant, or contemplated breaching the contract. The prayer of the complaint asks that a temporary restraining order be issued enjoining appellees from going through with the deal whereby the sale would be made to Earls, and that on final hearing "the Springfields be required to give plaintiff (appellant) the right of first refusal to buy the Baker Springfield property and to lease the Jane Springfield property . . . ; that the defendants be ordered to execute the necessary legal instruments." Appellants made a $5,000 bond and the court issued the temporary restraining order. Appellees demurred to the complaint and the amendment thereto, pleading the Statute of Frauds. On final hearing the court gave appellant the option of having the case transferred to the circuit court as a suit for damages for

breach of contract, or to remain in chancery, in which case the demurrer would be sustained and the complaint dismissed. Appellant elected to keep the case in chancery court. The court sustained the demurrer and dismissed the complaint.

Appellant insists that it entered into a valid contract concerning the purchase of the land and $30,000 worth of farming equipment, and acquired the option of leasing Baker's sister's land, and that it has the right to enforce such contract in a court of equity, notwithstanding the Statute of Frauds. In regard to the real estate, the Statute of Frauds (Ark. Stat. § 38-101) provides: "No action shall be brought . . . to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; fifth, to charge any person upon any lease of lands, tenements, or hereditaments for a longer term than one year . . . unless the agreement, promise, or contract, upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized." And Ark. Stat. § 68-1404, dealing with personal property, reads: "A contract to sell or a sale of any goods or choses in action of the value of thirty dollars ($30.00) or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

While conceding that oral contracts for the sale of real estate, and the sale of personalty exceeding $30 in value, cannot be enforced in some circumstances, appellant says that here there was an oral contract to make an enforceable contract and that such oral contract is not within the purview of the Statute of Frauds. Moreover, the complaint alleges that appellant let its em-

ployee, Mr. Cash, spend a few days looking into Springfield's financial affairs to help Springfield determine whether he wanted to sell, and that Springfield was indebted to appellant for a few hundred dollars; that by agreement no pressure had been applied on Springfield for the payment of this sum during the few days involved; that such actions on the part of appellant constituted part performance that takes the contract out of the Statute of Frauds. There is no merit to this argument, and it was properly rejected by the trial court.

Since appellant elected that the chancellor dismiss the complaint rather than have the case transferred to circuit court, appellant does not rely on a possibility of recovering damages for the alleged breach of the oral contract. It is appellant's theory that it has a right to buy the land and equipment for $214,000. It is clear from the complaint that there has been no delivery of any property whatever; that nothing was paid to bind the bargain and no memorandum in writing of any kind was made concerning the transaction. In these circumstances, if the Statute of Frauds is not applicable, then it is completely meaningless.

Appellant says there has been substantial performance of the contract on its part. This alleged substantial performance consists of a little work done by Mr. Cash to help Baker decide whether he wanted to sell, and appellant says that during these few days Baker was not pressed for the payment of a debt of a few hundred dollars he owed. Surely this cannot be said to be part performance of a contract for the sale of land and equipment in the sum of $214,000 sufficient to nullify the Statute of Frauds. By no process of the imagination can it be said that the little work done by Cash or the forbearance of the alleged debt for a few days is a part of the consideration for the purchase of land and equipment involving such a large amount of money. And there is no allegation in the complaint which would authorize the court to hold that Miss Jane Springfield was bound to execute a lease to her land for five years, with the option to renew for another five years.

According to the complaint and the amendment thereto, the most that can be said is that appellant permitted its accountant to help Baker Springfield make up his mind as to whether he wanted to sell. In its final analysis, the complaint simply alleges that appellant entered into an oral contract with Baker for the purchase from him of 420 acres and $30,000 worth of farming equipment, plus the right to rent 490 acres from Baker's sister, although it is not claimed that Baker's sister was ever contacted about the proposed deal. A contract for sale of land or interest therein must be in writing. *Chicago Mill & Lbr. Co.* v. *Matthews,* 163 Ark. 571, 260 S. W. 963; *Miles* v. *Scales,* 174 Ark. 412, 295 S. W. 375. A quotation from 49 Am. Jur. 368 is peculiarly applicable here: "While there are intimations to the contrary of the rule in a few scattered decisions, the general rule is that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable. Neither promise is enforceable unless the statute is satisfied. In other words, a parol agreement invalid under the statute is not aided by a further parol agreement to reduce the principal agreement to writing. To allow the enforcement of such an agreement would be tantamount to taking the main contract out of the statute, and as has been said, it is absurd to say that an oral promise in relation to certain subject matter is invalid, but that a promise that the party will thereafter bind himself with respect to the subject matter is valid. Such a construction would be a palpable evasion of the statute, and let in all the evils against which it is directed."

Since a demurrer was sustained by the trial court, no evidence was introduced to show damages sustained by reason of the granting of the temporary injunction, and the court allowed nominal damages in the sum of $100 to each of the four appellees. We are of the opinion that the amount awarded is excessive as nominal damages and that $10 to each of the appellees is ample.

The decree is modified to that extent and, as modified, affirmed.