H. K. FAULKINBURY AND FAULKINBURY FOOD STORE INC. v. UNITED STATES FIRE INS. CO.

5-4953                                              444 S. W. 2d 254

Opinion delivered September 8, 1969

*Mobley, Bullock & Harris* and *Smith, Sanderson, Stroud & McClerkin,* for appellants.

*Ned A. Stewart Jr.* and *Arnold & Arnold,* for appellee.

GEORGE ROSE SMITH, Justice. In 1966 the appellants, H. K. Faulkinbury and a family corporation, were operating a grocery store in Texarkana. Their public liability policy with the appellee included insurance against damage suits for false arrest. The question here is whether a suit which the insureds settled for $5,000 was actually an action for false arrest within the coverage of the policy. The trial court held that it was not and accordingly directed a verdict for the insurance company in this suit brought by the insureds to recover their outlay, with penalty and attorneys' fees.

We agree with the trial court. On March 26, 1966, Faulkinbury's 17-year-old daughter Sharon drove to the parking lot adjacent to her father's store. She testified that as she was getting out of her car a young man in a car next to hers made an insulting remark to her. She ran into the store and reported the incident to her father. Faulkinbury concealed a pistol in his shirt and went out to the parking lot to investigate the incident.

According to Faulkinbury and his son, a car occupied by several youths was just beginning to pull out of the lot. We quote that part of Faulkinbury's testimony that is pertinent to the controlling issue:

A. ... I stopped them—hollered for them to stop, and they stopped.

\* \* \*

A. ... I went on out and stopped them, and asked them what they were doing. They said, well, they weren't doing anything, and I said, "Did you say something to this girl standing in the

door?'' and they said, ''No, sir, we didn't say anything.'' They said, ''Call her out and we will prove it to you,'' so I turned and motioned for Sharon to come out. I thought, you know, possibly they might be the wrong ones, or something. Well, when I did, he pulled his car in gear and started easing up, and I told him, ''Well now, just wait a minute and let's see what this is all about,'' and so he used some pretty vile language at me, and started moving up, and I told him two or three times to stop, and he kept creeping off from me, and . . .

Q. Where were you, now, Mr. Faulkinbury, at this time?

A. I was leaning inside the car—had my arm over inside the car, holding on to the car, and him gradually trying to drive off. I asked him two or three times to stop, and he just kept getting a little faster. I told him he was going to have to stay there until I found out what was going on; and he cursed me a few more times and started—he really jerked me, you know, as he accelerated faster. After telling him to stop two or three times, I pulled my pistol out and told him I meant for him to stop, and he cussed me again and started on, so I shot him. I shot twice into that car.

\* \* \*

Q. All right. Mr. Faulkinbury, what happened right after you fired?

A. He just showered down on the gas, and more or less jumped the car out into the street, and went across the street into a little side street over there, and I could see that they were changing drivers, and they went on, and I went back

in the store and called the police and reported what happened.

Later on the driver of the car, whose legs were hit by the shots, brought suit for his personal injuries, alleging assault and battery and false arrest. The appellee denied its liability but offered to defend the suit at its own expense. The appellants, as we have said, settled the case for $5,000 and brought this action against their insurer.

Under the terms of the policy the appellants can recover only if Faulkinbury's conduct amounted to a false arrest of the injured youth. We think it plain that it did not. An essential element of the tort of false arrest, which is basically the same wrong as false imprisonment, is the unlawful detention of the plaintiff against his will. ". . . [I]f he agrees of his own free choice to surrender his freedom of motion, . . . then there is no imprisonment. . . . It is not necessary that the defendant have a warrant, or even that he be an officer, so long as he asserts the legal power to detain the plaintiff, and the plaintiff believes that the authority exists, and yields to it against his will." Prosser on Torts, § 12 (3d ed. 1964); see also Ark. Stat. Ann. § 41-1601 (Repl. 1964).

Giving the appellants' testimony its most favorable construction, we find no substantial proof of a false arrest. During the occurrence Faulkinbury made no statement even suggesting that he was attempting to make a citizen's arrest. Although the group of young men in the car at first stopped, they did so voluntarily rather than under any semblance of compulsion. Thereafter their freedom of movement was wholly uninhibited. They made their departure despite Faulkinbury's demands that they stop and despite his eventual resort to gunfire in a vain effort to bring the car to a halt. Upon the undisputed proof the trial court was right in holding that the injured driver's asserted cause of action against the appellants was for the tort of assault and

battery rather than for that of false arrest. It was therefore not within the coverage of the policy.

Affirmed.