Connie BETNAR *v.* Willard L. ROSE
and Wanda ROSE

76-3                                    536 S.W. 2d 719

Opinion delivered June 1, 1976

*Reed & Blackburn,* for appellant.

*Lightle, Tedder, Hannah & Beebe,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal arose out of a suit by appellees to recover $2,000 held in escrow by the Cleburne County Bank in connection with an oral real estate sales agreement between appellees and appellant. The trial court granted appellees' motion for summary judgment and ordered the return of the money to appellees who were to have been the vendees of a home built by appellant. Appellant contends that the court erred in granting the motion.

Appellant is a homebuilder. He offered for sale a house which was near completion. It is admitted that appellees approached him wanting to purchase it. At their second meeting, appellant agreed to complete construction and finish out a storage room, provide insulation, and put storm doors on patio and carport entrances. There is no allegation

that appellant failed to perform in any regard. The parties orally agreed upon a total price of $27,500, with earnest money of $2,000 to be applied as a down payment against the total. The agreement was not reduced to writing. Mr. Rose wrote his check payable to the order of appellant in that amount but, according to her testimony, Mrs. Rose was loathe to "turn loose of $2,000 not knowing him [appellant]." Appellant suggested that the bank hold the check, whereupon they visited Jerome Johnson of the Cleburne County Bank and placed the $2,000 check into an escrow account. Mr. Johnson wrote the terms of the escrow agreement on the deposit ticket. They were:

> This deposit is to be applied on the house and lot that Rose is buying from Betnar, provided Rose can obtain a loan. This Escrow Deposit is to be refunded back to Rose if a loan cannot be obtained.

Appellees did not get a loan and filed suit after demand for the return of the $2,000 in accordance with the condition listed on the deposit slip. In their complaint, appellees alleged that the bank held the funds relative to a purported real estate transaction, that there was no enforceable contract or agreement, that they had elected to withdraw from further negotiations relative to said purported transaction, and that they had demanded a return of the funds deposited by them. The Cleburne County Bank interpleaded the funds. Appellant answered, denying appellees' right to recovery and counterclaimed, alleging: that the sum was his, having been received pursuant to a legal contract for the sale of a home for $27,500, contingent upon appellees' obtaining a loan; that he remained ready and able to perform; that appellees were the equitable owners of the house, the subject of the contract; and that appellees had paid him the $2,000, which was then deposited with the bank. Appellees amended their complaint to allege that they had been unable to obtain a loan and denied that the Cleburne County Bank offered an acceptable loan.

The trial court granted appellees' motion for summary judgment, finding that the oral sales agreement was unenforceable as barred by the Statute of Frauds and that appellant stood ready to perform the agreement and declar-

ing the law to be that where a person has paid money or delivered property, under a parol contract for the purchase of land, which is void by the Statute of Frauds, he cannot maintain an action to recover it back so long as the other party, to whom the money or property was paid or delivered, is willing and able to perform, quoting from *Sturgis* v. *Meadors,* 223 Ark. 359, 266 S.W. 2d 81. However, the court concluded that delivery of the money to an escrow agent did not constitute delivery as contemplated under the rule of *Sturgis,* that the escrow agreement was itself parol and unenforceable under the Statute of Frauds, and ordered the bank to pay the $2,000 to appellees.

Thereafter, appellant amended his cross-complaint to allege physical receipt of the check of appellees and negotiation by delivery to the bank which had stamped the check "credited to the account of the within named payee." He also alleged that the terms of the escrow agreement, set out on the deposit slip, contained a condition subsequent, to wit, ". . . this Escrow Deposit to be refunded back to Rose if he can't obtain a loan."

Appellant filed a motion to set aside the summary judgment and for further hearings. The court reopened the matter to hear the testimony of the parties, again entering judgment for appellees.

For reversal, appellant argues that delivery of the check into escrow did constitute complete delivery for purposes of the *Sturgis* rule, that the escrow agreement was therefore enforceable, and that appellees failed to sustain the burden of proof to show the existence of the condition, to wit, that they were, after a good faith effort, actually unable to obtain a loan.

We agree that the payment of the check into escrow constituted delivery as is required for the application of the rule in *Sturgis.* The rationale underlying the rule applied by this court in *Sturgis* is that the purpose of the Statute of Frauds, so far as it relates to the sale of land, is to protect the vendor only, and the vendee seeking to recover the purchase price or a portion thereof cannot set up the statute against a vendor who is ready and willing to perform. Thus, the oral contract

cannot be considered void so long as he, for the protection of whose rights the statute exists, is willing to treat and consider the contract good. 73 Am. Jur. 2d 178, Statute of Frauds, § 542. According to the great weight of authority, the vendee, under an agreement for the sale and purchase of land which does not satisfy the statute of frauds, cannot recover back payments upon the purchase price if the vendor has not repudiated the contract but is ready, willing and able to perform in accordance therewith, even though the contract is not enforceable against the vendor either at law or in equity. See *Venable* v. *Brown*, 31 Ark. 564; Annot, 169 ALR 188 (1947). This is but a specific variation of the general rule recognized and applied by the court in *Baker* v. *Taylor & Co.*, 218 Ark. 538, 237 S.W. 2d 471. Under this rule, one who has paid money in consideration of an oral contract cannot rescind such contract and recover the money paid unless the other party insists upon the statute and refuses to perform it on his part. *Grauel* v. *Rohe*, 185 Md. 121, 43 A. 2d 201 (1945); 37 CJS Statute of Frauds, § 256, p. 779; 73 Am. Jur. 2d 177, § 541, 542.

This rule is generally applied, except in a few of the jurisdictions in which the Statute of Frauds makes a contract in violation of its terms void, rather than merely unenforceable. Our statute provides that no action may be brought on a contract which is not in compliance with the stated requirements. Ark. Stat. Ann. § 38-101 (Repl. 1962). The plain words of the statute indicate that contracts in violation of it are merely unenforceable, but not void. In spite of the fact that we once said that a contract was *void* because of the lack of a written memorandum (see *Robbins* v. *Horn*, 145 Ark. 475, 224 S.W. 748) and, on another occasion, referred to such a contract as invalid and unenforceable (see *Lee Wilson & Co.* v. *Springfield*, 230 Ark. 257, 321 S.W. 2d 775), we have also referred to a parol contract which did not comply with the statute as being unenforceable. *Wyatt* v. *Yingling*, 213 Ark. 160, 210 S.W. 2d 122. The statute is designed to prevent fraud, not shield or effectuate it. *Bolin* v. *Drainage District No. 17*, 206 Ark. 459, 176 S.W. 2d 143; *Lesser-Goldman Cotton Co.* v. *Merchants & Planters Bank*, 182 Ark. 150, 30 S.W. 2d 215. It has been said that it should not be considered the grant of a license to welch on a deal. *Hyder* v. *Newcomb*, 236 Ark. 231, 365 S.W. 2d 271. Our application of the statute has been

much more consistent with a construction that the statute only renders the contract unenforceable, not void. This construction is not contrary to the result reached in either *Robbins v. Horn,* supra, or *Lee Wilson & Co.* v. *Springfield,* supra. Although the words "void" and "voidable" have entirely different meanings, they are used interchangeably all too often, and we have on other occasions construed "voidable" to mean "void" and "void" to mean "voidable." *Simmons* v. *A. C. Carter & Co.,* 125 Ark. 547, 189 S.W. 176; *Ragan* v. *Cox,* 210 Ark. 152, 194 S.W. 2d 681; *Ragan* v. *Cox,* 208 Ark. 809, 187 S.W. 2d 874.

In statutory construction, we have said that their meaning is an open question to be decided by the connection and context in which they are used to carry out legislative intent. *Mobbs* v. *Millard,* 106 Ark. 563, 153 S.W. 821. We take the use of the words "void" and "invalid" in our opinions to be subject to the same treatment as we have given the words in such statutes. The real intent and effect of our opinions, in spite of occasional poor word choice, is consistent with the statutory language, i.e., that a contract in violation of the statute is merely unenforceable. This is best illustrated by language in *Skinner* v. *Fisher,* 120 Ark. 91, 178 S.W. 922. We said:

Even though the statute of frauds might have been interposed if an effort had been made on the part of the appellee to enforce the verbal agreement for the sale of the plant to him by the appellant, still in such case it would not be obligatory upon the appellant to plead the statute of frauds in defense. It would at least be optional with him whether he did so or not, and his verbal contract to sell the property would at least impose upon him a moral obligation, and the appellee would at least have had the right to sue upon the contract and put the appellant to the test as to whether he would set up the defense of the statute of frauds. Therefore the verbal agreement gave to the appellee rights which would have warranted him in interfering with an attempted sale of the property to other parties. Appellant, as we have seen, when he signed the contract in suit, acknowledged those rights and the binding obligation he was under to make the sale he had verbally agreed to make and promised to pay the $500 as a consideration for his

abandoning his rights under the verbal contract, even though appellant now disputes that appellee had such rights. The contract sued on plainly shows an agreement on the part of the appellant to pay appellee the sum of $500 for whatever alleged rights the appellee had under the verbal contract, whether these rights were susceptible of enforcement or not.

Furthermore, the rule applied in *Sturgis* has been applied even though the money may have been in the hands of a third person for the benefit of the vendor to be paid over to him upon his performance under the contract. *Burford* v. *Bridewell*, 199 Okla. 245, 185 P. 2d 216 (1947); *Coughlin* v. *Knowles*, 7 Met (Mass) 57 (1843). In *Coughlin*, the court stated: " . . . it is equally true, that the provisions of the statute [of frauds] are not so broad as to entitle a party, who has entered into an oral contract, by which he is to receive a conveyance of land, and towards payment for which he has made advances in money, to set aside such contract as a nullity, and reclaim the money so advanced, the other party being no way in fault, but being both able and ready to perform his contract . . . the money was placed in the hands of the defendant [escrow], under a written contract executed by him, and the terms of this contract show that he held it for M'Nulty [vendor] dependent only upon the condition that M'Nulty performed his part of the agreement. The effect of thus placing the money in the hads of the defendant was to render it irreclaimable by the plaintiff, except in case of failure on the part of M'Nulty to fulfill his agreement." Accord, *Chaffin* v. *Harpham*, 166 Ark. 578, 266 S.W. 685. Indeed, it would make no sense to distinguish in the application of the rule between actual delivery to the vendor and delivery to an escrow since, in the light of the purpose of precluding the vendee from using the statute as a sword against the party for whom it was intended to be a shield, the rationale underlying *Sturgis* applies with equal force in either case.

In the instant appeal, a writing containing the terms of the escrow agreement was produced. It conditioned the effectuation of the sale upon the appellees' getting a loan. It expressly conditioned the return of the $2,000 upon appellees' failure to arrange a loan. The writing contained no specifics regarding just what efforts appellees were to have made or

what terms they were to have accepted for a loan, but in the absence of such specifics, appellees had the duty to make a reasonable effort and to accept reasonable terms in order to satisfy the condition of the agreement relating to the return of the $2,000. See, *Jones* v. *Gregg*, 226 Ark. 595, 293 S.W. 2d 545.

The evidence on the subject of appellees' failure to obtain a loan is somewhat conflicting. Appellant testified that Johnson offered the Roses a loan when the escrow was arranged but the Roses said they could get one in White County. Johnson testified that the Cleburne County Bank would take a first mortgage on the house they were buying and a second mortgage on their house in Searcy until they could sell it and apply the proceeds, first to the payment of the first mortgage debt and the balance remaining to the Cleburne County Bank loan. Johnson said the loan offered was temporary until the Searcy property was sold. He also said that the payments on the loan he could make would have been pretty large.

Jack Claridy, manager of the Heber Springs Savings & Loan Association testified that he could have made a 25-year loan on a $27,500 home for 90 per cent of the purchase price, but that he would not have loaned $26,000.

Willard Rose testified that White County Guaranty Company turned them down because they were experiencing a shortage of funds. They would loan only 80 per cent of the purchase price. Mrs. Rose said that they intended to borrow all of the purchase price except for the down payment, i.e., $25,500. A niece of the Roses testified that Mrs. Rose said when she asked appellant about the amount of the deposit that she did not want to tie up their house in Searcy. Whether the efforts of appellees in this case were reasonable in either respect was a question which should properly have been put to a trier of fact. See, *Southern Wooden Box, Inc.* v. *Ozark Hardwood Mfg. Co.*, 226 Ark. 899, 294 S.W. 2d 761; *Reynolds* v. *Ashabranner*, 212 Ark. 718, 207 S.W. 2d 304.

Appellees suggest that the parties intended for the trial court to decide the entire case sitting as the trier of fact and not merely the motion for summary judgment and that the judgment should be affirmed because it is supported by sub-

stantial evidence. We cannot agree.

There was nothing in the abstract of the record to indicate that the court tried the issue on the merits or that the parties waived their right to a trial of the factual issue by a jury. At the rehearing of the motion for summary judgment, the reporter recorded the following:

THE COURT: I don't think we are at a point where the Court is going to try this case on the testimony. We are at a point where the Court decides whether or not he sets aside the Summary Judgment. The Court is not going to decide this case. The Court is going to decide whether his Summary Judgment should stand or he should set it aside and the case be ready for trial.

MR. LIGHTLE: Your Honor, if we put on all the testimony this afternoon, that will be all the case.

THE COURT: I didn't know we had agreed to submit it on the evidence. This evidence is merely taken on whether or not the Summary Judgment should be set aside.

*******

MR. LIGHTLE: Of course, we move that the motion to set aside the Summary Judgment be dismissed. There is nothing new out of this testimony.

THE COURT: Do you have other witnesses, Mr. Blackburn?

MR. BLACKBURN: I have Jack Claridy from the Savings and Loan, who will testify to the ability of the man to get a loan. And I would show he had good credit there.

THE COURT: I am going to hear all the evidence either of you has, and ask you to submit briefs on it, and take it home and decide it within a week.

MR. LIGHTLE: This testimony adds nothing to it.

This is the testimony on which the Summary Judgment was granted.

THE COURT: Motion taken under advisement.

We reject appellees' strained construction of these exchanges. There is no doubt that the trial court considered only the issue of summary judgment. The final judgment recited that, after submission of motions for summary judgment by both parties, the court heard *additional* oral testimony and concluded with a statement that its previous findings and conclusions should not be disturbed.

In light of the existence of a factual issue, it was error to have entered the summary judgment. In order for a summary judgment to have been justified, there must have been no genuine issue of material fact and all evidence must have been viewed in the light most favorable to the party against whom the judgment would go. If fair-minded men might differ about the conclusion to be drawn or if inconsistent hypotheses might reasonably have been drawn from the supporting testimony, a summary judgment should have been denied. *Southland Insurance Agency* v. *Northwestern National Insurance Co.*, 255 Ark. 802, 502 S.W. 2d 474. Such was the case here. The motion for summary judgment should have been refused and the cause heard on all the evidence before a trier of fact.

The judgment is reversed and the cause remanded for further proceedings.