Robert "Say" McINTOSH, Appellant,

v.

ARKANSAS REPUBLICAN PARTY— FRANK WHITE ELECTION COMMITTEE; Arkansas State Police; Tommy Goodwin, Individually and as Director of the Arkansas State Police; North Little Rock City Police Dept.; Bill Younts, Individually & as Chief of North Little Rock Police Dept.; John Doe, & Richard Roe, etc., Appellees.

No. 86-1938.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1987.

Decided April 14, 1987.

P.A. Hollingsworth, Little Rock, Ark., for appellant.

Bill Luppen, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and CAHILL,* District Judge.

HEANEY, Circuit Judge.

This case has been before this Court once before. *See McIntosh v. Ark. Republican Party—Frank White, Election Comm.*, 766 F.2d 337 (8th Cir.1985). Robert McIntosh now appeals the dismissal by the district court on remand of his federal claim under 42 U.S.C. § 1983 and of his pendent state claim. Those claims assert that McIntosh was arrested and falsely imprisoned in violation of the federal Constitution and state law by the appellees, Sergeants Jerry Reinold and Barney Phillips of the Arkansas State Police. We reverse and remand for trial on the issue of damages.

McIntosh lives in Little Rock, Arkansas, where he owns a restaurant. McIntosh is perhaps better known for his community activities such as operating a free breakfast program for school children and a work program to help young adults learn to start businesses. According to McIntosh, he also does "a little protesting now and then."

It was McIntosh's involvement in protesting that prompted him to buy a ticket for $125 to the Frank White Appreciation Luncheon scheduled for February 26, 1982, at a banquet hall in the Little Rock Convention Center. The purpose of the luncheon was to raise money for White's re-election campaign for Governor of Arkansas. Vice President George Bush was to be the luncheon's guest speaker.

Before the date of the luncheon, McIntosh notified Governor White's office that he intended to speak at the luncheon. Aware that McIntosh ardently opposed Governor White's re-election and of McIntosh's reputation as a political activist, Curtis Finch, the person in charge of the luncheon, decided that McIntosh should be refunded the money paid for the ticket and not allowed to speak. *See McIntosh*, 766 F.2d at 339.

On the day of the luncheon, a group of protesters gathered on the ground floor of the Convention Center. McIntosh stood by himself in a common access area on a lower floor connected to the ground floor by an escalator. McIntosh positioned himself about twenty feet from the double-doors of the banquet hall. He wore an old brown suit, a wide red necktie, a red tie around his waist, and tattered cowboy boots. McIntosh intended his attire to bring the plight of the poor to the attention of those attending the luncheon.

Upon noticing McIntosh in the common access area, Finch approached him and asked him to leave, offering a refund of the $125 paid for the ticket. Finch repeated his request two or three more times. Each time McIntosh responded that he had his ticket and planned to enter the banquet hall. Sergeants Reinold and Phillips, who had been forewarned of McIntosh's intended presence, went over to McIntosh. They told McIntosh that he could not attend the luncheon and asked him to leave. McIntosh repeated his intention to attend. When Reinold and Phillips threatened to arrest him, McIntosh responded "Well, then take me to jail." After McIntosh ignored another request by Reinold to leave, Reinold and Phillips arrested him.

Reinold and Phillips handcuffed McIntosh, carried him up the escalator, and brought him to the police car. McIntosh did not resist the arrest. The officers took McIntosh to North Little Rock jail where

* The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, sitting by designation.

he was charged with disorderly conduct. The police detained McIntosh for one and three-quarters hours; McIntosh spent most of that time in a holding cell. The police released McIntosh on an appearance bond. The charge against him was later dismissed.

McIntosh filed a lawsuit in federal district court seeking compensatory and punitive damages of $2,000,000. McIntosh asserted that the defendants[1] abridged his civil rights in violation of 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, by denying him entrance to the luncheon because of his race, by denying him the opportunity to speak at the luncheon, and by arresting him. McIntosh also asserted state claims of false arrest and false imprisonment. The district court dismissed McIntosh's lawsuit. *See McIntosh v. White*, 582 F.Supp. 1244 (E.D.Ark.1984).

On the first appeal, this Court affirmed the dismissal of the federal claims based on allegations of racial discrimination and violations of free speech. *See McIntosh*, 766 F.2d at 340–41. We further held that the district court had not ruled on McIntosh's section 1983 claim based on false arrest, although McIntosh had pleaded and argued the issue below. We thus remanded this claim to the district court for a new trial on the merits. *Id.* at 341. Finally, in regard to McIntosh's pendent state claims of false arrest and false imprisonment, we determined that the district court had not followed state law in placing the burden of proving the arrest was without probable cause on McIntosh. We, therefore, reversed the district court. *Id.*

On remand, the district court again dismissed McIntosh's lawsuit. The district court held that Reinold and Phillips had probable cause under federal and state law to arrest McIntosh. This appeal ensued.

**A. McIntosh's Section 1983 False Arrest Claim**

It must initially be mentioned that McIntosh's section 1983 false arrest claim relies on a substantive fourth amendment right to be free from unreasonable searches and seizures. His claim is not based on procedural due process rights. Therefore, the Supreme Court's holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that a section 1983 due process claim cannot be based on a state employee's negligent loss of property if state remedies provide adequate relief, does not affect the viability of McIntosh's section 1983 claim. *See Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985), (section 1983 false arrest claim based on substantive fourth amendment right not barred by *Parratt*); *see also Wilson v. City of North Little Rock*, 801 F.2d 316, 321–22 (8th Cir.1986) (section 1983 claim of violation of equal protection clause of fourteenth amendment because of a racially motivated deprivation of property not barred by *Parratt*).

Since the officers in this case do not dispute that they detained McIntosh, the central issue is whether the officers have carried their burden of showing they arrested McIntosh with probable cause. *See Giordano v. Lee*, 434 F.2d 1227, 1230 (8th Cir.1970), *cert. denied*, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971). In analyzing the probable cause issue, the district court, relying on *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979), asked whether Reinold and Phillips reasonably believed McIntosh *had committed or was about to commit* the misdemeanor of disorderly conduct. We believe this is the wrong standard.

Although *DeFillippo* seems to equivocate on the nature of probable cause standard,[2] subsequent decisions of the Su-

[1]. McIntosh named a number of defendants in his original lawsuit. *See McIntosh*, 766 F.2d at 337. This Court directed that only Reinold and Phillips should remain in the lawsuit on remand. *Id.* at 342.

[2]. At one point in the opinion, the majority states, "[i]t is not disputed that the Constitution

permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Id.* 443 U.S. at 36, 99 S.Ct. at 2631 (citations omitted). At another point the Court states "[t]his Court repeatedly has explained that 'probable cause' to justify an arrest means facts

preme Court and this Court have confirmed that the proper standard is whether the arresting officer reasonably believes an individual *has committed or is committing* a crime.[3]

█ Examining the facts of this case and the Arkansas disorderly conduct statute under this standard, it is apparent that Reinold and Phillips did not have probable cause to arrest McIntosh. The provision of the Arkansas disorderly conduct statute, under which McIntosh was charged, states "[a] person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he * * disrupts or disturbs any lawful assembly or meeting of persons." Ark.Stat. § 41–2908(1)(d) (Repl.1977).

We find no evidence in the record which would give Reinold and Phillips a reasonable basis for believing McIntosh had violated or was violating the Arkansas disorderly conduct statute. At no time during the incident at the Convention Center could one have reasonably believed that McIntosh disrupted or disturbed the campaign luncheon.

Reinold and Phillips point out that, in their conversations with McIntosh in the common access area, he became agitated and his voice rose. Reinold testified that he thought the incident might "get out of hand." The officers, however, never state that McIntosh shouted, made loud noises, or otherwise became unruly. The district court did not find nor did Reinold and Phillips claim that they thought McIntosh's voice was audible in the banquet hall. In fact, we find no evidence in the record showing the officers could reasonably have thought McIntosh's voice or actions in any way affected the persons entering or gathering in the banquet hall.

Reinold and Phillips counter that they should not have been forced to "sit idly by and wait until a verbal confrontation developed into a physical confrontation or until Mr. McIntosh stepped through the threshold of the door." According to Reinold and Phillips, McIntosh's stated intention of entering the banquet hall and his agitated state provided sufficient probable cause to arrest McIntosh. We disagree. While Reinold and Phillips did not have to "sit idly by," they did have to wait to arrest McIntosh until they reasonably believed he had committed an offense or was in the process of committing an offense. From the record it is clear that McIntosh had not so much as nodded toward the doors of the banquet hall once he assumed his position approximately twenty feet from the doors. Without words or conduct that in themselves created a disruption or disturbance, as defined by the Arkansas statute, Reinold and Phillips simply could not have reasonably believed that McIntosh had violated or was violating the disorderly conduct statute. Therefore, as a matter of law Reinold and Phillips did not have probable cause to arrest McIntosh.

### B. Pendent State Claim

█ We also conclude that the district court's dismissal of McIntosh's pendent state claims of false arrest and false imprisonment was improper. As in McIntosh's federal claim, once detention of the arrestee is conceded, the defendants carry the burden of showing that the detention was based on probable cause. *See McIntosh*, 766 F.2d at 341 (citing *Wells v. Adams*, 232 Ark. 873, 340 S.W.2d 572, 574 (1960)). This is the Arkansas test for both

---

and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37, 99 S.Ct. at 2632. In the cases cited to support this proposition, however, the standard employed clearly is "has committed or is committing an offense." *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975).

3. In *Ybarra v. Illinois*, 444 U.S. 85, 96 n. 11, 100 S.Ct. 338, 345 n. 11, 62 L.Ed.2d 238 (1979), the Supreme Court has made clear that *DeFillippo* stands only for the proposition that an officer has probable cause to arrest a suspect if the officer believes that the suspect "had committed or was committing a substantive criminal offense." *See also United States v. Garcia*, 785 F.2d 214, 225 (8th Cir.1986) (citing, *e.g., DeFillippo*, 444 U.S. at 36, 99 S.Ct. at 2631).

false imprisonment and false arrest. *See id.* (citing *Faulkinbury v. United States Fire Insurance Co.*, 247 Ark. 70, 444 S.W.2d 254, 255 (1969)). Because Arkansas law provides the same probable cause standard as federal law, *see United States v. Barber*, 557 F.2d 628, 630 (8th Cir.1977) (analyzing Ark.Stat. § 43–403 (Repl.1977)); *see also Gaylor v. State*, 284 Ark. 215, 681 S.W.2d 348 (1984), we hold that Reinold and Phillips falsely arrested and falsely imprisoned McIntosh under Arkansas law.

**C. Qualified Immunity**

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Reinold and Phillips pleaded the federal qualified immunity defense at trial.

█ We believe that Reinold and Phillips should not be shielded from liability in this case because they violated clearly established federal constitutional law. They did this by arresting McIntosh without probable cause, i.e., without a reasonable belief that McIntosh had committed or was committing a criminal offense at the time of arrest. This standard has a long history. It was enunciated in *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and has been followed in subsequent cases such as *Adams v. Williams*, 407 U.S. 143, 148–49, 92 S.Ct. 1921, 1924–25, 32 L.Ed.2d 612 (1972), and *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975). Although as dis-

cussed previously, *see supra* pp. 411–412, *DeFillippo*, 443 U.S. at 37, 99 S.Ct. at 2632, could be said to have cast doubt on the standard for probable cause, cases such as *Ybarra*, 444 U.S. at 96 n. 11, 100 S.Ct. at 345 n. 11, have removed that doubt. These cases clearly established long before the arrest in this case occurred that an officer can only arrest a suspect if he or she reasonably believes that the suspect has committed or is committing a criminal offense.

Reinold and Phillips also suggest that they should not be held liable for the arrest of McIntosh even if it was clearly without probable cause, because they acted with a good faith belief that they had probable cause. We believe *Harlow* has made the subjective state of mind of a defendant irrelevant to his or her defense once it has been determined that the defendant violated clearly established law.[4] *See, e.g., Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985) (en banc), *cert. dismissed,* ── U.S. ──, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986). We, therefore, hold Reinold and Phillips to be unprotected by the qualified immunity defense.

**CONCLUSION**

We hold as a matter of law that Sergeants Reinold and Phillips did not have probable cause to arrest McIntosh and also that they are unprotected by federal qualified immunity. We, therefore, remand this case to the district court for a trial on the issue of damages in McIntosh's section 1983 false arrest and state false arrest and false imprisonment claims.

---

4. Some cases have also held that the plaintiff has the burden in section 1983 false arrest cases of showing that the arresting officer acted without probable cause and not in good faith. *See, e.g., Guenther v. Holmgreen*, 738 F.2d 879, 888 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985) (although this case seems to have been overturned by *Llaguno*, 763 F.2d at 1569). Other cases have indicated that the arresting officer's good faith belief is relevant to a section 1983 false arrest claim. *See Washington v. Simpson*, 806 F.2d 192, 195

(8th Cir.1986). We believe the question of an officer's good faith in a section 1983 false arrest case is a vestige from a time when the good faith defense was a part of the qualified immunity defense. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Since the element of good faith has been removed from the qualified immunity defense, it should not be reintroduced either as a separate defense or as an element in the plaintiff's cause of action.